Hon. JOSEPH R. SWAN,  |  Hon. OZIAS BOWEN,
Hon. JACOB BRINKERHOFF,  |  Hon. JOSIAH SCOTT.

## James Summons *v.* The State of Ohio.

The clause of the tenth section of the bill of rights, providing that, " *on any trial in any court, the party accused shall be allowed to meet the witnesses face to face,*" which, like numerous other provisions in the bill of rights, is a constitutional guaranty of a fundamental principle well established and long recognized at common law, has reference to the *personal presence* of the witnesses called to testify, and not the *quality* or *competency* of the evidence to be given.

Testimony proving the statements made by a deceased witness on oath, at a former trial between the same parties, being one of the *established exceptions* to the rule that *hearsay is incompetent* as evidence, the admission of a witness to give evidence of this kind in a criminal case, does not contravene the aforesaid provision of the constitution.

It is not essential to the competency of such evidence, that it be given in the exact words used by the deceased person; but while the witness is allowed to give the *substance* of the statements of the deceased person on the former trial, he is not allowed the latitude of giving their mere *effect*.

It is essential to the *competency of the witness* called to give this kind of evidence, first, that he heard the deceased person testify on the former trial; and second, that he has such accurate recollection of the matter stated, that he will, on his oath, *assume* or *undertake* to narrate in substance, the matter

sworn to by the deceased person, in all its material parts, or that part thereof which he may be called on to prove.

It is essential to the *competency* of *the evidence*, first, that the matter stated at the former trial by the witness, since deceased, should have been given on oath; second, between the same parties, and touching the same subject matter, where opportunity for cross examination was given the person against whom it is now offered; and third, *that the matter sworn to by the person since deceased be stated, in all its material parts, and in the order in which it was given, so far as necessary to a correct understanding of it.*

The requirement that *all* the matter sworn to on the former trial by the person, (since deceased,) be stated, being one of the tests of the *competency* of *the evidence,* but not of the *competency* of *the witness,* it is not essential that it be all proven by a single witness.

When the matter sworn to on a former trial by a person since deceased, has been proven on the part of the State in a criminal case, by a witness who assumed to state the substance of all the statements to which the deceased person had deposed, and evidence is afterwards given in the defense proving *certain matters* in the statements of the deceased witness which were omitted in the evidence on the part of the State, the jury are not, for that reason, required to reject the evidence on the part of the State, offered to prove what the deceased witness had testified; provided, that taking this evidence on the part of the State in connection with the other evidence in the case, they are satisfied they have before them the substance of all the evidence given by the deceased witness on the former trial.

THIS is a writ of error to the District Court of Hamilton county.

In July, 1849, James Summons was indicted for the murder of Electa Reeves by administering poison. He elected to be tried in the supreme court of the county. Two trials were had in the supreme court in Hamilton county, and on each trial the juries failed to agree. The case was pending in that court at the time the constitution of 1851 took effect, and by force of the twelfth section of the schedule, was transferred to the district court.

Mary Clinch, who had been examined as a witness for the State on the first trial of this case, and also on the trial of an indictment against the accused for the murder of Henry Armstrong by poisoning in the same transaction, died on the 11th of August, 1850. Upon the second trial in the supreme court, Thomas A. Logan had been offered by the State and admitted as

a witness to prove what Mary Clinch, the deceased witness, had sworn on the first trial.

At the April term, 1852, of the district court, Summons was again put on trial.  Logan was again offered as a witness by the State.  From the bill of exceptions taken on the trial, it appears that Logan was first examined as to his ability to detail the testimony of Mary Clinch.  He testified that he was present at the first trial, and was the student and clerk of Judge Walker, one of the counsel for the State ; that he heard all the testimony given by Mary Clinch, and thought he had taken it all down in writing, and could give the substance of all she testified from his recollection, aided by reference to his notes.  On cross examination as to this point, he stated that he took down as nearly as possible the substance of all that Mary Clinch testified on examination, cross-examination, reëxamination and in rebutter.  That he recollected, without reference to his notes, the main points of her testimony, and recollected the substance of all of it by refreshing his recollection with his notes.  That he could not say he took everything, but he thought he took the substance of everything. That the cross-examination was rapid, but Judge Walker frequently stopped the witness, Mary Clinch, to enable him to get it all down.  That he thought he did state on the trial of this cause a year ago, that he took notes of what he deemed material ; his notes did not show whether they were taken on the trial of Summons for the murder of Electa Reeves or on that for the murder of Henry Armstrong, but he recollected they were taken in the case of Electa Reeves.

Logan was then requested by counsel for the State to give the testimony of Mary Clinch from his recollection, refreshed by his notes, which he had with him in court, but the notes were not offered in evidence.  Defendant's counsel objected, and the objection overruled, which was excepted to.

The witness, Logan, then proceeded to detail the testimony of Mary Clinch, which tended to prove that on the evening of July 20th, 1849, the family of Captain Summons consisted of himself, his wife, their son-in-law and daughter, their two sons, William .

and James the prisoner, their grand-child Paul Huston, Mrs. Electa Reeves, and Mary Clinch.

That all of the family were made sick by white arsenic mixed with their tea, or the water of which it was made, except James Summons, the prisoner, and Mary Clinch, neither of whom drank of it. It further tended to show that the prisoner on that evening mixed the arsenic with the water in the tea kettle whilst the supper was being prepared. Upon cross-examination, Logan testified that Judges Caldwell and Spalding sat on the first trial. His notes did not show this, but he thought they were the judges. His impression was very indistinct as to the reasons which Mary Clinch gave for allowing the prisoner to tie up her foot with a rag as he did, after it had been done before by Mrs. Summons. He did not recollect whether she was asked about the kind of rag used. That the cross-examination of Mary Clinch was rapid, and he had no positive recollection of the minutia of her testimony without refreshing his memory with his notes. Her examination in chief lasted a day, and the cross-examination nearly a day. His notes did not contain several matters in her testimony to which defendant's counsel called his attention, nor did his recollection serve him, until it was mentioned, that she was asked particularly as to the manner and position of the doors in the house —that his notes as to this were accurate as far as they went, but were not full ; he thought, however, that he recollected all that she testified on that subject.

That he could not recollect what she testified as to Mrs. Summons being in her own room, in bed, without refreshing his memory from his notes—that it was in his notes. He thought she said there was no meat got for supper, but his notes said she could not tell. There was nothing in his notes, and he recollected nothing, about the testimony of Mary Clinch as to calling the family to supper. He did not take so accurate notes of the testimony of other witnesses as of Mary Clinch, who was deemed the most important witness, and Judge Walker told him to take full notes of her testimony.

" She testified as to using kindling wood in making the fire ;

the words in my notes are, she kindled the fire ; and this refreshes my recollection as to what she did say."

On reëxamination in chief, he stated that he wished to correct a statement he had made on cross-examination—that he was confused, and that Judge Avery, and not Judge Spalding, sat with Judge Caldwell on the first trial. He did not recollect the question asked Mary Clinch by defendant's counsel which drew out the conversation as to defendant's father threatening to put the defendant in the watch-house, and which Mary Clinch seemed to hesitate about answering.

At the close of Logan's testimony, the counsel for the defendant moved to rule out the same, which motion was overruled, and exception taken.

The State also gave in evidence other testimony, tending to prove that Electa Reeves died in Hamilton county on the 21st July, 1849, and that her death was caused by white arsenic mixed with the tea which she drank the evening before, at the house of Captain Summons; also testimony as to certain circumstances and conversations tending to show that the defendant mixed the arsenic with the tea.

The defendant then gave evidence tending to contradict and explain that given on behalf of the State, and offered as witnesses Judge William B. Caldwell and John L. Pendry, who testified that they were present on the first trial; heard Mary Clinch testify ; took notes of her testimony, and could recollect portions of it, but neither of them was able to give the substance of all of it ; and each testified to certain matters given by her in testimony, which were omitted by Logan in his statement of her testimony. Also, Mrs. Summons, who testified, on cross-examination, that on the Saturday morning after the poisoning, when she was in her room in bed, she did not say to Mary Clinch, " Mary, if any one asks you any thing about James, tell them he has been out of his head for three weeks." That she did not at that or any other time, say to Mary Clinch, " Don't you tell about James being in the kitchen, and then we can put it on the colored girl, that lived here before you."

The defendant having rested, the State gave testimony tending

to rebut the evidence given by defendant, and also recalled Logan, who testified as to what Mary Clinch had testified when recalled in rebutter ; that he could not, in detailing the testimony of Mary Clinch, either in chief or rebutter, give the questions which were put to her, except by framing them with reference to the answers he recollected she gave, on reading his notes. He also testified, that Mary Clinch stated when recalled in rebutter, that on Saturday morning, about eight or nine o'clock, the morning after the poisoning, Mrs. Summons was in her own room in bed, and at that time said : "Mary, if any one asks you any thing about James, tell them that he has been out of his mind for the last three weeks." And said Logan further testified, that here occurred in his notes this sentence : "That was all that time ;" and then followed as the testimony of Mary Clinch, and which he recollected to be her testimony : "Then she, Mrs. Summons, said : 'Don't you tell them about James being in the kitchen, and then we can put it on the colored girl, who lived here before you.'" That he could not explain the sentence in his notes : "That was all that time." He could not recollect whether the sentence next preceding it was part of the same conversation with the sentence next following it or not ; nor whether the last sentence was a conversation which occurred on the same, or a different day, from the one preceding. The court thereupon, on motion of defendant's counsel, ruled out all of that statement in regard to "James being in the kitchen, and putting it on the colored girl."

The foregoing testimony of Mary Clinch, as to the statements of Mrs. Summons, was given for the purpose of impeaching Mrs. Summons. No witness, except Thomas A. Logan, was offered on either side, who testified that he thought he could give the substance of all Mary Clinch's testimony.

The charge of the court as to the evidence of Logan, detailing the testimony of Mary Clinch, was as follows :

"Before we proceed, however, to this branch of the case, it is proper that we should make some remarks to you in regard to the testimony of Mary Clinch, which has been detailed to you not by herself, for she is dead, but, at second hand, by witnesses who

heard her testify. This secondary evidence the law permits and requires you to consider; but what weight shall be given to it, is a question for your determination. In deliberating on this question, it is necessary for you to remember, that it is not alone what a witness says that demands the attention of a jury. His appearance and manner of testifying are important matters for consideration, and these oftentimes have as much and as rightful an influence in deciding upon his credibility as has the apparent reasonableness or unreasonableness of his statements. In this case, you are deprived of these aids in judging of the testimony of Mary Clinch. As to her appearance and manner of testifying, you know nothing personally. What you know, you learn from narration. So, too, the imperfection of memory is to be borne in mind, and the consequent difficulty of detailing former statements with accuracy, after a considerable lapse of time. The narrator may be ever so honest and careful, and yet the liability to error is almost unavoidable. For these and other reasons that might be mentioned, it is not, perhaps, too much to say that but few cases occur where secondary evidence of this kind is entitled to full weight. Much must depend upon the fact whether it is corroborated or not by other and reliable testimony. When not thus corroborated, it is to be regarded with extreme caution. When a jury are satisfied that they have not the substance of all that was said by the deceased witness, it is to be rejected altogether. When they are satisfied that they have all the substance, and it is strongly fortified by other satisfactory proofs, it may be entitled to considerable weight.

"We are asked to charge you, that if you believe ' that Logan has failed to give all the substance of all the testimony of Mary Clinch, or has failed to give her testimony in the order and connection in which it was delivered by her on the stand, his testimony does not come within the rule under which it was admitted by the court; and, at all events, that, in consideration of the great lapse of time, and the voluminous nature of the testimony he undertakes to repeat, it ought to be received with the greatest caution.'

" We have already said, in effect, that Mr. Logan's testimony is

to be received with the greatest caution; and we have no hesitation in ruling that a witness, called to narrate the evidence of a deceased witness, should recollect the order and connection of the testimony, so far as such order and connection are necessary to convey an accurate understanding of what the deceased said and meant, and the influence and credit to be given to the testimony. But we are not prepared to say, that if Mr. Logan has failed to give the substance of all Mary Clinch's evidence, that therefore you must entirely reject his testimony; provided that, taking his testimony and that of the other witnesses who have detailed what she testified to, you are satisfied that you have the substance, correctly, of all her testimony. The very point under consideration was decided in the case of *Ballenger* v. *Barnes*, 3 Dev. 460, Cowen & Hill's note 442 to Phil. on Ev., and the ruling in that case is supported by other high authorities. The result of these authorities is what we have already stated, namely, that if the jury are satisfied from the testimony of all the witnesses, that they, the jury, have before them the substance of all the evidence of the deceased witness, the testimony must be considered. What weight shall be given to it is for the sound judgment of the jury to decide."

The jury found the prisoner guilty of murder in the first degree.

The defendant's counsel moved to set aside the verdict and grant a new trial, which motion was overruled, and a bill of exceptions was taken.

The defendant was sentenced to be executed.

To reverse this judgment, the present writ of error is prosecuted, and the following matters are assigned for error:

First. The court admitted Thomas A. Logan to repeat the testimony of Mary Clinch, a witness who testified at a former trial, and since deceased.

Second. The court refused to rule out the testimony of Logan, after it appeared, from his own statements, that he was unable to give the entire substance of all the testimony of Mary Clinch.

Third. The court directed the jury, " That, if they were sat-

isfied from the testimony of all the witnesses, that they had before them the substance of all the evidence of the deceased witness, the testimony must be considered."

*F. T. Chambers, N. C. Read,* and *R. B. Hayes,* for plaintiff in error.

*R. B. Hayes,* submitted the following points and authorities on behalf of plaintiff in error:

I.   The testimony of a deceased witness is not admissible against the accused in a criminal case ; and this rule is to be upheld with especial strictness in cases affecting life.   Constitution of 1802, Art. 8, sec. 11; New Constitution, Art. 1, sec. 1; Hale's History of Com. Law, 290–91; 3 Blackstone Com. 373; 4 Reeves' History of E. L. 504; 2 Hawkins' Pl. of Cr., Cap. 46, sec. 1—12; Bacon's Abr., Tit. Evidence, E; *Fenwick's Case,* 5 Harg. St. Trials 37; 1 Macaully's Evidence 316; 1 Gilbert's Evidence 136; Peake's Evidence 60; 2 Pothier on Obligations 200; 1 Chitty Crim. Law 617; 3 Elliot's Debates 223; Swift's Evidence 124; 2 Story's Com. on Constitution 1791; *Finn* v. *Commonwealth,* 5 Rand. 701; *Woodsides* v. *State,* 2 How. Miss. 665; *State* v. *Atkins,* 1 Tennessee 227; *People* v. *Newman,* 5 Hill 296; *People* v. *Restell,* 3 Hill 297; 10 Grattan 732.

II.   Such testimony is not admissible in criminal cases, unless the very language of the deceased witness can be repeated by the person who undertakes to give it.   *Jackson* v. *Soule,* R. M. Charlton 37; *Melvin* v. *Whiting,* 7 Pick. 81; *Commonwealth* v. *Richards,* 18 Pick. 434; *Warren* v. *Nicols,* 6 Metc. 265; *Bliss* v. *Long,* Wright's Rep. 351; *Smith* v. *Smith,* Ib. 643; *Montgomery* v. *State,* 11 Ohio Rep. 424; *Wagers* v. *Dickey,* 17 Ib. 439; *Shepherd* v. *Willis,* 19 Ib. 146; *Anthony* v. *State,* 2 Meigs 277; 3 Wash. C. C. Rep. 440.

III.   The court erred in not ruling out the testimony of Logan after it appeared by his own statements that he could not give the entire substance of the testimony of the deceased witness.

IV.   The court erred in directing the jury that they must consider the testimony of Logan, even if they believed he had failed to give all the substance of the testimony of the deceased witness,

provided, that taking his testimony with that of the witnesses called to impeach his accuracy, they were satisfied that they had correctly the substance of all the testimony of the deceased.

V.   If the judges of the supreme court are equally divided in opinion in a capital case, (four only of the judges sitting in the case,) the accused is entitled to a reversal of the judgment against him.   Swan's Stat. 731.

The following authorities *contra*, commented on: 2 Russel on Crimes 752; *Rex* v. *Carpenter*, 2 Show. 47; *Rex* v. *Smith*, 2 Stark. 208; *Rex* v. *Payne*, 1 Salkeld 281; *Buckworth's case*, T. Raymond, 170; 3 Phil. Ev. 323, 1 pt. Cow. & Hills, notes 437–442; *State* v. *Hooker*, 17 Ver. 663; *Rex* v. *Barbour*, 1 Root 75; *Cleary* v. *Sprague*, 12 Wend. 45; *Thorp* v. *State*, 15 Ala. 749; *Davis* v. *State*, 17 Ib. 354; *Kendrick* v. *State*, 10 Humph. 479.

*C. P. Wolcott*, Attorney General, submitted the following points and authorities for the State:

I.   The admission of evidence against an accused person, to prove the testimony of a deceased witness at a former trial on the same indictment, does not contravene those provisions of the constitution which secure to " a party accused " the right " to be confronted with the witnesses against him," or " to meet the witnesses face to face."

1. The accused was " confronted with," and did " meet face to face," all the witnesses called for or against him.   Mary Clinch on the last trial was not a witness.

2. These provisions establish no new rule, but simply declare a right recognized at and settled by the common law prior to the revolution.     See McNally's Evidence, 194 top-paging, 284 marginal paging, where common law rule is laid down.

3. The object of these provisions is to exclude any testimony by deposition, which could be given orally in the presence of the accused, but not to define the quality or competency of the evidence to be given " face to face," according to the rules of the common law.    The right secured applies to the witness, and not to the subject matter of his testimony.    This is evident from the

general analogies of the law.   The declarations of a co-conspirator which are part of the *res gestæ*—statements made in the presence of the accused and not denied by him—declarations of sick persons as to the nature, effect and symptoms of the malady they are laboring under—in prosecutions for rape, the statement of the prosecutrix immediately after the commission of the offense, have uniformly been held admissible.   1 Greene 129 ; Whart. Crim. Law 244 ;   *United States* v. *Gooding*, 12 Wheat. 468 ; *Am. Fur Co.* v. *United States*, 2 Peters 365 ; *People* v. *McGee*, 1 Denio 19 ; *Johnston* v. *State*, 17 Ohio Rep. 593 ; *Laughlin* v. *State*, 18 Ohio Rep. 99.

So, also, as to dying declarations in cases of homicide, which have always been deemed admissible.   1 Greene Ev. 205 ; 1 Cow. & Hills, notes and cases there cited ; *Pennsylvania* v. *Stoops*, Addison, 381 ; *State* v. *Arnold*, 13 Iredell, 184 ; *McLean* v. *State*, 16 Alabama, 672 ; *State* v. *Cameron*, 2 Chand. (Wisc.) 172 ; *Greene* v. *State*, 13 Miss. 382 ; *State* v. *Shawley*, 4 Harr. (Del.) 562 ; *Com.* v. *McPike*, 3 Cushing, 181 ; *Montgomery* v. *State*, 11 Ohio Rep. 424.

4. The question, however, does not rest on this analogy alone. In the following cases, the constitutional objection against the admissibility of dying declarations was made and directly overruled. . *Woodsides* v. *State*, 2 How. (Miss.) 655 ; *Campbell* v. *State*, 11 Georg. 353 ; *Commonwealth* v. *Hill*, 2 Grat. 594.

This class of testimony is obviously much more objectionable than that received in the present case, as the accused could have no opportunity to cross-examine.

5. But the very point now under consideration has been the subject of frequent adjudication, and in the following cases it was directly held that the admission of evidence in a criminal case, to prove the testimony of a deceased witness at a former trial, did not violate the constitutional right of the accused " to meet the witness face to face."   *Anthony* v. *State*, 4 Meigs (Tenn.) 205 ; *Kendrick* v. *State*, 10 Humphrey 479 ; *State* v. *Tilghman*, 11 Iredell 513 ; *State* v. *Canney*, 9 " Law Reporter " 408, decided by Supreme Court of Maine ; *Com.* v. *Richards*, 18 Pick. 434 ; *Johnston* v. *State*, 2 Yerger 58.

No adjudicated case is cited to the contrary, save *State* v. *Atkins*, 1 Overton 229 ; an early case in Tennessee, since directly overruled in *Kendrick* v. *State*, 10 Humphrey 479, cited above.

II.　Independent of the constitutional objection, evidence of the testimony of a deceased witness given on a former trial in a civil or criminal case, is admissible on a subsequent trial of the same case.

1. While courts, especially in former times, have differed as to the question whether the very words of the deceased witness, or only the substance of his testimony, should be proved, the rule itself, at least in civil cases, has never been doubted or denied. The most familiar case, perhaps, is that of depositions taken in a former suit between the same parties in respect to the same subject matter, which have invariably been held admissible.　1 Phillips Ev. 230 ; 1 Stark. Ev. 184 ; 1 Cow. & Hills notes, 571 ; 1 Greenl. Ev. 213 ; Swift's Ev. 125.

And in this respect there is no difference between written and unwritten testimony.　1 Stark. Ev. 310, note 314 ; *Sheperd* v. *Willis*, 19 Ohio Rep. 142.

2. The objection that such testimony, however limited, was never receivable in criminal cases, is not well founded.

1st. The only authorities (with one exception) cited for it, are some of the earlier writers on the law of evidence, who cite Sir Jno. Fenwick's case alone, which was a parliamentary proceeding by bill of attainder, (5 Hargrave's State Trials 62,) but the doctrine finds no support in any well-considered case. The only modern case cited is that of *Finn* v. *Commonwealth*, 5 Randolph, and that is founded on the *dictum* in Peake's Ev. 60, which in turn is founded solely on Sir John Fenwick's case.

2d. Depositions taken before a coroner under the statutes 1 and 2, Philip and Mary, (which provide merely for the examination and binding over of accused persons,) in cases of felony were received in evidence where witness was dead, though taken in the absence of the prisoner.　2 Poth. Ob., Evan's note ; Peake's Ev. 93–4 ; 1 Phillips Ev. 372.

So, also, depositions on the bailment or commitment taken before a justice, under 2 and 3 Philip and Mary, c. 10, and under

statutes of 7 Geo. 4, c. 64, in cases of felony or misdemeanor, if taken under oath, and in presence of the accused, are admissible if the witness be dead.   See cases last above cited.

Neither of these statutes expressly, or impliedly authorized the admission of these depositions, but they were received " upon general principles of evidence."   2 Stark. Ev. 382, and cases there cited.

3d. The modern English cases seem to have turned entirely on the question whether the testimony was taken under oath, in a judicial proceeding, and subject to the right of cross-examination, and whenever the testimony has been so taken, it is admissible if the witness be dead.   1 Phil. Ev. 368; 2 Stark. Ev. 383; 2 Greenl. Ev. 215; *Regina* v. *Beeston*, 29 Eng. Law and Eq. 527.

4th. But this question has been directly made in criminal trials, and such evidence has been held admissible.   *Buckworth's case*, 3 Raymond 170; *Rex* v. *Jolliffe*, 4 Term Rep. 290; *United States* v. *Wood*, 3 Wash. C. C. R; *Com.* v. *Richards*, 18 Pick. 434.

III.   Though it was formerly held that the testimony of a deceased witness could not be proved except in his very words, yet such is not the general modern rule.

1. The old rule was founded on a decision made by Lord Kenyon at *nisi prius*, (4 Term Rep. 290,) and which seems to have been understood very differently by some of his commentators. 1 Phillips Ev. 230; 1 Cow. and Hill's notes 578–79–80.

The rule thus limited amounts in practice to a total interdict of such testimony, or to admit it only where every one must be satisfied that no credit should be given to it, and it is now very generally held, at least in civil cases, that it is sufficient to prove the substance of what was sworn to on the former trial.   1 Greenl. Ev. 220; 1 Cow. and Hill's notes, 578–79–80; *Young* v. *Dearborn*, 3 Foster (N. H.) 372; *Caton* v. *Lenox*, 5 Randolph 31; *Garrott* v. *Johnson*, 11 Gill and Johns. 173; *Gildersleeve* v. *Garraway*, 10 Alabama 260; *Doncaster* v. *Day*, 3 Taunton 261; *Cornell* v. *Greene*, 10 Seargt. and Rawle 14,

22

16 ; and in Ohio, the question has been put at rest.    *Wagers* v. *Dickey*, 17 Ohio Rep. 439.

2. The general.rules of evidence, however, are unquestionably the same in civil and criminal cases.    Roscoe's Crim. Ev. 1 ; 1 Archbold Cr. Ev. and Pl.; 1 Cow. and Hill's notes, 172 ; and the books *passim*.

3. Even in criminal cases, where a witness is called to prove words spoken, as the declarations of co-conspirators, the confessions of the accused, statements which are part of the *res gestœ*, testimony in respect to which the accused has been indicted for perjury, and dying declarations, the identical words are not required, but only the substance.    Yet these cases are, in this respect, not distinguishable from that under consideration.    The same reason which requires the words in one case, would equally require them in the other ; and the same principle which admits the one will also admit the other.

4. Courts of modern times have held that in criminal cases, it is competent to prove the substance of a deceased witness' testimony on a former trial.    In the cases cited immediately below, the question was made and ruled in favor of the admissibility of the *substance* of the testimony.    *Rex* v. *Rowley*, 1 Moody's Crown Cases 111 ; 1 Stark. Ev. 502, citing *Rex* v. *Reed*, M. and M. C. 403 ; *Kendrick* v. *State*, 10 Humphrey 479 ; *Montgomery* v. *State*, 11 Ohio Rep. 424, as to substance of dying declarations ; *Davis* v. *State*, 17 Alabama 354 ; *State* v. *Canney*, 9 Law Reporter 408 ; *Johnston* v. *State*, 2 Yerger 58 ; *State* v. *Hooker*, 2 Washburne (Vt.) 658.

IV.    The position taken by the counsel for the plaintiff in error, that unless the person called to prove the former testimony can state the substance of *all* of it, he is an *incompetent* witness, does not seem to be sanctioned by reason, or borne out by the authorities.

1. Though it is not to be denied that many of the cases use the language that the former testimony may be proven by any one who " *can*," or who is " *able*," or who will " *undertake* " to repeat its " substance," or that a witness who cannot so state the substance is " incompetent," yet it is submitted that the rule

does not go to the competency (in the strict sense of that phrase) of the witness, but only requires that the substance of the whole testimony shall be proven to the jury. The "substance," like any other fact, may be proved by one or more witnesses. It is enough if each witness be able to state the substance of all that he undertakes to give. If it cannot *all* be proved, then the jury will, as in the case of any other fact not proven, be instructed to disregard it altogether. This, it is submitted, is the true rule to be deduced from the authorities.

V. The question as to whether the substance of all of Mary Clinch's testimony had been proven, was a pure question of fact; and was, therefore, properly left to the jury. *Ballenger* v. *Barnes*, 3 Devereux 461; *State* v. *Hooker*, 2 Washb. (Vt.) 658.

VI. Even if the rule does go, as is claimed, to the competency of the witness, it is not clear that it has been violated.

1. In its strictest form, the rule only insists that the *witness* shall "undertake to," shall "swear that he can," state the former testimony with such detail as the practice of the court requires. 1 Cow. & Hill's notes 578. If the witness do this, he is "competent," and all the rest goes to the jury.

2. The fact claimed by counsel for plaintiff in error, that Logan admitted, in the course of his examination, he could not state the substance of all of it, applies only to the testimony given by him when recalled to rebut the evidence offered on behalf of the now plaintiff in error, but does not affect his evidence in chief.

VII. The rule, as laid down by the judge in the court below, imposed no unusual hardship on the accused. In fact, it is more favorable than any other instance in which "hearsay" testimony is admitted. In all other instances, the "hearsay" goes to the jury without either of the two grand tests of truth usually required by the laws of evidence—the sanction of an oath, and the right to cross-examine. In this case, both tests were applied. Mary Clinch was sworn and cross-examined.

BARTLEY, C. J., delivered the opinion of the court.

The assignments of error in this case, present the following questions for determination:

1st. Whether the district court erred, by admitting evidence on behalf of the State, to prove the statements of a witness (since deceased), given as evidence at a former trial on the same indictment.

And if not:

2d. Whether it be essential to the competency of such evidence, that it be given in *the identical words* of the deceased witness.

3d. Whether the court erred in refusing to exclude from the consideration of the jury the testimony of Logan, on the alleged ground that he had failed to narrate the statements of the deceased witness on the former trial, in all its material parts.

4th. Whether the district court erred in charging the jury that, if they were satisfied that the witness Logan had not given the substance of *all* the statements of the deceased witness on the former trial, they were not for that reason to exclude it from their consideration, provided, that, taking the testimony of Logan in connection with the testimony of other witnesses, they were satisfied that they had before them the substance of all the statements given by the deceased witness as evidence on the former trial.

Of these, in their order—

1. It is claimed, that the admission of testimony against the accused in a criminal case, to prove the statements given as evidence on a former trial of the cause, by a witness since deceased, contravenes the provision of the tenth section of the bill of rights, which provides that, " *In any trial, in any court, the party accused shall be allowed* [among other things] *to meet the witnesses face to face.*" This, like numerous other provisions in the bill of rights, is a constitutional guaranty of one of the great fundamental principles well established, and long recognized at common law, both in England and in this country. The scope and operation of it are clearly defined and well understood, in the common law recognition of it ; and the assertion of it in the fundamental law of the State, was designed neither to enlarge nor curtail it in its operation, but to give it permanency, and secure it against the power of change or innovation.

The object of this provision manifestly is to exclude testimony

by depositions, by requiring it to be given orally, in the presence of the accused, on the trial.   The admission of testimony by depositions against the accused in a criminal cause, would often afford the prosecutor great advantages over him, as well as furnish, at times, opportunities for abuses beyond the reach of detection by the defendant.   Deprived of this right, the accused would often be without the opportunity of cross-examination, without the means of seeing, hearing, or knowing the persons who testify against him, and without the advantage of an oral examination of the witnesses before the jury which is to decide upon his case. But important as this right is, as established at common law, and secured by the constitution, it has application to the matter of the personal presence of the witness on the trial, and not to the subject matter or competency of the testimony to be given.   The requirement that the accused shall be confronted, on his trial, by the witnesses against him, has sole reference to the personal presence of the witnesses, and it in no wise affects the question of the competency of the testimony to which he may depose. When the accused has been allowed to confront, or meet face to face, all the witnesses called to testify against him on the trial, the constitutional requirement has been complied with.   This was done on the trial of the case before us, in the district court. Mary Clinch was not a witness on that trial.   Being dead, it was an impossibility that she could be a witness on that trial.   Logan, however, who was a witness, and did testify, did meet the accused face to face on the trial.   The provision in the bill of rights was complied with.   And the true question is, not whether the constitutional right of the accused was violated, but whether the testimony given by Logan on the trial was competent or not.

There are several well established exceptions to the rule that hearsay is not evidence.   But if the right secured by the bill of rights applies to the *subject matter of the evidence,* instead of the *witness,* it would exclude, in criminal cases, all narration of statements or declarations made by other persons, heretofore received as competent evidence.   The construction insisted on for the plaintiff in error, treats the person whose statements or declarations are narrated, as the witness, rather than the person who

testifies on the trial.    This construction would exclude all declarations *in articulo mortis*, by confounding the identity of the dying man with that of the witness called upon in court to testify to such declarations.    Precisely the same objection would exclude all declarations by co-conspirators—statements made in the presence of the accused in a criminal case, and not denied by him ; and the statements by the prosecutrix in prosecutions for rape, made immediately after the commission of the offense.    And, by a parity of reasoning, the admissions or confessions of the accused, and, in prosecutions for perjury, the very testimony of the accused on which the perjury may be assigned, would be excluded by the provision in the bill of rights forbidding that any person shall be compelled, in any criminal case, to be a witness against himself.

The constitutional objection has been, on several occasions, urged against the admissibility of dying declarations.    And there would seem to be even more reason for the exclusion of this, than evidence of the statements of a deceased witness on a former trial.    For the latter would seem to be, now, confined to cases where opportunity for cross-examination had been afforded, and, therefore, to cases where the accused had been confronted by the deceased witness when the testimony was given on the former trial.    But the competency of the testimony of dying declarations in cases of homicide, appears to have been so well settled by adjudications, that it will scarcely be questioned hereafter.    *Commonwealth* v. *Hill*, 2 Grat. 594 ; *Campbell* v. *State*, 11 Georgia 353 ; *Woodside* v. *State*, 2 How. (Miss.) 655 ; *Penn* v. *Stoops*, Addison R. 381 ; *State* v. *Arnold*, 13 Iredell 184 ; *McLean* v. *State*, 16 Alabama R. 672 ; *State* v. *Cameron*, 2 Chand. (Wis.) 172 ; *Greene* v. *State*, 13 (Miss.) R. 382 ; *State* v. *Shawley*, 4 Harr. (Del.) 562 ; *Commonwealth* v. *McPike*, 3 Cush. 181 ; *Montgomery* v. *State of Ohio*, 11 Ohio Rep. 424.

Testimony of the statements of deceased witnesses given on a former trial, between the same parties, touching the same subject matter, has been admitted among the exceptions to the rule excluding hearsay evidence, from a very early period, and has been sanctioned by an unbroken current of decisions, both in England

and in this country. It has been received *ex necessitate*, and under proper precaution, as *secondary evidence*, being the best evidence the circumstances of the case admit of. The main reason for the exclusion of hearsay evidence, is to be found in the want of the sanction of an oath, of legal authority requiring the statement, and an opportunity for cross-examination. Where these important tests of truth are not wanting, and the testimony of the statements of the deceased witness, is on a subsequent trial, between the same parties, touching the same subject matter, and open to all the means of impeachment, and objections as to competency, which might be taken if the deceased person could be personally present as a witness, there would not appear to be any sound and satisfactory ground for its exclusion.

This doctrine has been denied, however, all application to criminal cases, but without any good and substantial reason. The general rules of evidence, the sole object of which is the ascertainment of truth, are usually the same both in civil and in criminal cases. In the case of declarations made *in extremis*, indeed, even greater latitude is given in criminal, than in civil cases. And as to the testimony of the statements of a deceased witness, given on a former trial, it must be conceded, that the accused *is confronted by the persons called to testify against him*, on the last, as well as on the former trial. The authorities cited, on behalf of the plaintiff in error, to except the application of the rule from criminal cases, are not well sustained. They consist chiefly of some of the earlier elementary writers on the law of evidence, who have relied solely on the case of *Sir John Fenwick*, 5 Harg. St. Trials 62. That was a proceeding in Parliament by bill of attainder, on a charge for high treason. It appeared that Lady Fenwick had spirited away a material witness, who had sworn against one Cook, on his trial for the same treason. And the recorder having said, that the deposition taken before the examining justice was evidence against the prisoner, he having caused the witness to be spirited away; this was treated as something novel, and it was asserted that no lawyer would advance it who was out of his A B C. To this, another member replied, that he thought Lord Hale was beyond his A B C, especially in the

Pleas of the Crown; and he read from his book, that an ex parte deposition might be used against the prisoner, when the witness was dead or withdrawn. Now, this was not the case of a *deceased witness,* nor a case where there had been an *opportunity for cross-examination* on a former trial between the same parties.

A remark of Mr. Evans, in his 2d Vol. of Pothier on Contracts, has been referred to as sustaining this exception in criminal cases; but Mr. Evans cites no authority to sustain him. Also, the case of *The State* v. *Atkins,* 1 Tenn. Rep., by Overton, 229, is referred to. But this case is directly overruled in *Johnson* v. *The State,* 2 Yerger's Rep. 58, and in the case of *Kendrick* v. *The State,* 10 Hump. Rep. 479, in the same State.

The case of *Finn* v. *The Commonwealth,* 5 Rand. Rep. 701, is relied on; but the only authority cited to support this case is that of Peak's Evidence, and that rests solely on the authority of *Fenwick's Case.* Besides this, in *Finns' Case,* the statements offered were not those of a witness since dead, but one *admitted to be living,* who had removed from the State. The case, therefore, is not in point. The decision in *Finns' Case* was approved by the same court in 1853, in *Brogy's Case,* 10 Grattan's Rep. 722. This was a case where an offer was made on behalf of the prisoner, to prove what a witness living, but absent from the State, had sworn at a former trial. In neither of these cases, does the principle settled bear any thing like as strong analogy to the case before us, as *Hill's Case,* decided by the same court in 1845, where the constitutional objection to the admission of dying declarations was urged and overruled.

The competency of such testimony, in criminal cases, is very clearly sustained by the weight of authority in England. In the case of *The King* v. *Radburne,* (1 Leach. C. C. L. 512, 3d ed.,) the testimony of a deceased witness, who had been examined in the presence of the prisoner, was held admissible. The same doctrine is recognized in Bullver's Nisi Prius 242, and by Lord Kenyon in the case of *The King* v. *Jolliffe,* 4 Ter. Rep. 290. In *Buckworth's Case,* adjudged in the reign of Charles II, it was held, that to sustain an information for perjury, it was competent to prove by a witness what another witness had testi-

fied on the first trial. Sir T. Raymond's Rep. 170. To the same effect is *Rex* v. *Smith*, 2 Starkie's Rep. 186. And in the more recent case of *Regina* v. *Beeston*, (29 Eng. L. & Eq. Rep. 527,) this doctrine is fully sanctioned. Also, 2 Lilly's Abr. 745, and *Rex* v. *Rowley*, 1 Moody Crown Cases 111; *Rex* v. *Reed*, M. & M. C. 403; and *Rex* v. *Carpenter*, 2 Shower 47.

In the case of *The United States* v. *Wood*, 3 Wash. C. C. Rep. 440, it was held, that what a witness (since dead) had testified at a former trial on the indictment, may be proven by a person who was present and heard his testimony.

In the case of *The Commonwealth* v. *Richards*, 18 Pick. Rep. 434, the constitutional question touching the competency of such testimony was directly presented, the words in the bill of rights in Massachusetts being substantially the same which are used in the constitution of Ohio. And, after full deliberation, it was held, that the competency of such evidence was not affected by the provision in the bill of rights. This decision, which is entitled to very high consideration, is directly in point in the case before us, upon the constitutional question.

To the same effect are the cases of *Kendrick* v. *The State*, 10 Hump. Rep. 479; *Crawford* v. *The State*, Yer. Rep. 60, in Tennessee; *The State* v. *Canney*, decided by the supreme court of Maine, 9 Law Reports 408; and *The State* v. *Hooker*, 17 Ver. Rep. 659. And in strict analogy on the constitutional question, are the cases of *Campbell* v. *The State of Georgia*, 11 Geor. Rep. 354; *Hill's Case*, 2 Grattan's Rep. 595, in Virginia; *The State* v. *Tilghman*, 11 North Carolina Rep. 514; *Montgomery* v. *The State*, 11 Ohio Rep. 424; *Woodsides* v. *The State of Mississippi*, 2 How. (Miss.) Rep. 656.

These adjudicated cases, and the reasoning by which they are sustained, appear to me to take the question of the constitutional competency of this testimony wholly out of the field of controversy.

2. Is it essential to the competency of the testimony in question, that it be a narration of the statements of the deceased witness *ipsissimis verbis?*

The admission of this testimony rests upon the ground of *mere*

*secondary evidence*, being the best which the circumstances admit of. The statements of the deceased witness having been made on oath, and under legal requirement, and in a case in which opportunity for cross-examination was afforded to the person against whom they are offered, carry with them the ordinary judicial tests of truth. Evidence of them, therefore, is allowed as an exception to the general rule which excludes hearsay ; but it is always received with a vigilant precaution against liability to mistake, misapprehension or perversion. And there would seem to be no sound reason for subjecting it to a rigid rule amounting to its almost total exclusion, which is inapplicable in other cases where testimony showing words spoken, or the statements of a party or other person, is admissible. In prosecutions for perjury, the testimony of the accused upon which perjury is assigned, is not required to be *ipsissimis verbis*, but allowed to be given in substance. So with the declarations of a co-conspirator ; declarations made *in extremis ;* or the admissions or confessions of a party. So also with testimony of verbal slander, or the declarations or statements of a party or witness, offered for purposes of contradiction or impeachment. If in these and numerous other instances, the witness is not required to narrate the statements in the identical words of the other person, but is allowed to state the substance of what he heard, in language as near that which was used as he can recollect, what sufficient reason can exist for a departure from the rule, in case of the testimony of a deceased witness on a former trial ? It is said that a slight variation may materially change the testimony. This may be, but there exists a like exposure to the danger of material variation in those cases where testimony of the substance of the hearsay declarations of parties is daily admitted.

Touching this rule of *ipsissimis verbis* in the evidence of the statements of a deceased witness, Mr. Justice Gibson, in *Cornel* v. *Green*, 10 Serg. and R. 14, said, " the rule, applied with that degree of strictness, would be altogether useless in practice ; for there is no man, be his powers of recollection what they may, who could be qualified to give such evidence ; and if he should undertake to swear positively to the very words, the jury ought

on that account alone to disbelieve him." It is the constant observation of lawyers, familiar with trials at *nisi prius*, that the testimony of witnesses is rarely remembered, or even taken down by those taking notes at the time, in the identical words of the witnesses, although the facts and ideas are in substance distinctly noted and remembered. Even the same witness called to testify on a second trial, does not and cannot, in narrating the same facts, repeat the identical words used by him on the former trial. The synonomy of our language is such, that a literal adherence to the same words is not necessary to the expression of the same ideas. " The substance of what a witness has said, the facts he stated, the opinions he expressed, the reasons he assigned, the explanations he gave, the motives he avowed, may all be faithfully testified to without even an attempt to repeat all the words." To require the statements of the deceased witness, therefore, to be given in the *same words*, is prescribing a rule not essential to the communication of truth, and one " which the imperfection of our nature, in the structure of the human memory, will not warrant. It, in truth, excludes the thing which it proposes to admit, and at the same time opens a door for knaves to enter where honest men cannot approach."

The rigid rule that the very words of the deceased witness must be given, does not appear to have been required in the English decisions, excepting one or two cases. In *Buckworth's case*, (Sir Thomas Raymond's Rep. 170) it was not required. Nor in the case of *Coker* v. *Farewell*, 2 P. Wms. 563. In *Pike* v. *Cranch*, 1 Lord Raymond 730, it was resolved, in a trial at bar, that " if a man was sworn as a witness at a former trial, and gave evidence and died, the *matter* that he deposed at a former trial may be given in evidence at another trial by any person who heard him swear it at the former trial." Here the language of the court excluded the restriction; for it was the *matter* (not the words) of the deceased witness which was allowed.

In *Mayor of Doncaster* v. *Day*, 3 Taunt. Rep. 261, Mansfield, C. J., said : " What a witness (since dead) has sworn upon trial between the same parties, may be given in evidence, either from the judge's notes, or from notes that have been taken by any

other person who will swear to their accuracy; *or the former evidence may be proved by any other person who will swear from his memory*, to its having been given."

To the like effect are the cases of *Rex* v. *Radbourne*, Leach. C. C. L.; *Rex* v. *Paine*, Salk. 281, 5 Mod. 183; and *Rex* v. *Smith*, 2 Starkie Rep. 183. In *Doe* v. *Passingham*, 2 Car. & Payne 440, a witness was allowed to prove what a deceased witness had sworn to on a trial which had taken place thirty-two years before, touching the legitimacy of the plaintiff's mother. In *Todd* v. *The Earl of Winchelsea*, 3 Car. & Payne 387, the testimony of the deceased witness touching a complicated matter, was read from the notes of a short-hand writer. And in *The King* v. *Whitehead*, 1 Car. & Payne 67, the evidence of a witness for the prosecution examined on a former trial, who had since died, was read from the Lord Chief Justice's notes, without a pretense that the notes gave the identical words of the deceased witness.

The doctrine, that the testimony must be in the words of the deceased witness, appears to have taken its origin from a dictum of Lord Kenyon, in the case of *Rex* v. *Jolliffe*, 4 Ter. Rep. 385, as follows: " The evidence which the witness gave on a former trial, may be used in a subsequent one, if he die in the interim, as I remember was agreed on all hands, on a trial at bar in the instance of Lord Palmerston; but as the person who wished to give Lord Palmerston's evidence could not undertake to give *his words*, but could *merely swear to the effect of them*, he was rejected." This remark of Lord Kenyon, which appears to have been thrown in rather by way of illustration than otherwise, has been adopted by some elementary writers on evidence, and given as the true rule. Lord Kenyon mentions a case not to be found reported in any book, where he says, " *it was agreed on all hands*," that evidence of the testimony of a deceased witness at a former trial *was admissible*. Now, it would not be a little remarkable, that this learned judge should lay it down as a general rule conceded on all hands, that such testimony was admissible, and yet, in the same breath, annex to it a restriction which would destroy its practicability, and in more than ninety-nine cases in

a hundred, wholly prevent its application; yet such would be the effect of his ruling, if he is to be understood as saying that what a witness swore to on a former trial, cannot be given in evidence unless it be *ipsissimis verbis*. But the remark is not clear and precise, and is susceptible of a different construction. The evidence was rejected, as it would appear, because the witness, not undertaking to give *the words* of the deceased witness, could *merely swear* " *to the effect of them.*" The witness was rejected because he could do no more than give " *the effect* " of the deceased witness' testimony. Now, the effect of testimony is the conclusion or consequence produced by it, on the mind of the hearer. It would be clearly too loose a rule to allow a witness, in detailing the evidence of a deceased witness on a former trial, to give the *mere effect* of it as he understood it. The substance of the testimony may be given in other words conveying the same meaning, without giving the mere effect of the testimony. This is the construction which appears to have been given to the remark of Lord Kenyon by the court of appeals in Virginia, in the case of *Caton* v. *Lenox*, 5 Rand. Rep. 36.

Mr. Starkie, speaking of the strictness of the rule inferred from Lord Kenyon's remark, expresses his doubts " whether so great exactness is necessary," and adds, " even an indictment for perjury sets out the substance only." 2 Starkie's Ev. 280, note n. Phillips lays down the strict rule, " but thinks the words of the rule susceptible of such a construction as shall let in *the substance*, and requiring certain of the exact words only, as in stating a conversation, may be found requisite to a safe understanding of its substance."

Greenleaf, the most recent standard author on the law of evidence, says, that the strictness which formerly required *the precise* words of the deceased witness, is not now adhered to, and that it is " generally considered sufficient, if the witness is able to state the *substance* of what was sworn on the former trial."

The supreme court of Maryland, in *Bowie* v. *O'Neale*, 5 Har. & John. 226, and also the supreme court of North Carolina, in *Bellinger* v. *Barnes*, 3 Dev. 460, take a distinction between the *substance* and the *effect* of the testimony of the deceased witness,

allowing the *substance* to be given, but not the *effect*. This distinction would admit of a practicable application of the rule as stated by Lord Kenyon, and make it consistent with the other English decisions.

In Massachusetts, the rule requiring the statements of the deceased witness at a former trial, to be *ipsissimis verbis*, is laid down in its utmost strictness, in the case of *The Com.* v. *Richards*, 18 Pick. 434. And in *Warren* v. *Nicols*, 6 Metcalf Rep. 261, the doctrine was affirmed, Hubbard, J., dissenting. In the latter case, however, the majority of the court drew a distinction between giving the *substance* of the deceased witness' testimony, and the *substance of his language;* requiring only that his *language* should be stated *substantially*, and in all *material particulars*, and not *ipsissimis verbis*. It is not very easy to perceive how this distinction can be reconciled in this regard, with the decision in the case of *The Com.* v. *Richards*.

In the State of Indiana, the rule laid down in *Richards' Case*, in Massachusetts, was adopted in *Ephraims* v. *Murdock*, 7 Blackf. Rep. 10.

In the State of Pennsylvania, the doctrine, that what a deceased witness has sworn on a former trial cannot be admitted, unless proven in his precise words, is distinctly and directly overruled in a series of adjudications. In *Cornell* v. *Green*, 10 Serg. & Rawle, Mr. Justice Gibson, in his cogent opinion exposing the fallacy of requiring the testimony of the deceased to be given *ipsissimis verbis*, says: " I cannot see why the same necessity, which opens the way for secondary evidence of the very words of a deceased witness, should not open the way also for the substance of his testimony when his very words cannot be recollected ; or discover the policy of a rule, which should shut out the little light that is left, when it is *all* that is left, merely because it may not be sufficient to remove everything like obscurity." This is in accordance with *Miles* v. *O'Hara*, 4 Binney Rep. 108 ; *Wolf* v. *Wyeth*, 11 Serg. & Rawle 149 ; *Watson* v. *Gilday*, 11 Ib. 337 ; *Chess* v. *Chess*, 17 Ib. 409 ; *Moore* v. *Pearson*, 9 Watts & Serg. 50.

In Maryland, it is held sufficient that the witness called to tes-

tify, " prove *facts*, that is to say, that the witness who is dead, in giving his testimony, deposed to *certain facts* without giving *the words* of the decedent." *Garrott* v. *Johnson*, 11 Gill. & Johns. 173.

In the State of Vermont, it is held, that it is not necessary to prove the exact language used by the deceased witness, but sufficient if the substance of the testimony as given by him be detailed. *The State* v. *Hooker*, 17 Vermont Rep. 659.

To the same effect are the cases of *Gildersleeve* v. *Caraway*, 10 Ala. Rep. 260 ; *Kendrick* v. *The State*, 10 Hump. Rep. (Tenn.), above referred to; *Caton* v. *Lenox*, 5 Randolph Rep. (Virginia), above referred to; *Sloan* v. *Somers*, 1 Spencer's Rep. 66, New Jersey ; *Ballenger* v. *Barnes*, 3 Dev. 460, North Carolina ; and *Young* v. *Dearborn*, 3 Foster's Rep. (New Hampshire) 372.

In Ohio it has been settled, in a well considered decision in the case of *Wagers* v. *Dickey*, 17 Ohio Rep. 440, that it is sufficient for the witness to give the *substance* of what the deceased witness testified on the former trial.

It is apparent, from a review of the decisions on this question, that the weight of authority is very decidedly against the rule, which requires an exact recital of the words used by the deceased witness. The difficulty which appears to have troubled courts so long on the question, has been a controversy about *words*, rather than *facts*. The efficacy of the testimony consists, not in the mere *words* used, but the *matters of fact* stated by the deceased witness. If the facts stated by the deceased witness on the former trial, can be narrated with substantial accuracy in all their material particulars, there would seem to be no good reason for cavil about the very words. There is a distinction, however, between narrating *the statements* made by the deceased witness, and giving *the effect* of his testimony. This may be illustrated thus : If a witness state that A, as a witness on a former trial, proved the execution of a written instrument by B, that would be giving the *effect*, which is nothing else than the result or conclusion produced by A's testimony. But if the witness state, that A testified that he had often seen B write, and

was acquainted with his hand writing, and believed that the name subscribed to the instrument in writing exhibited was B's signature, *that* would be giving the substance of B's testimony. While, therefore, a witness should not be trammeled by a rule restricting him to the words used by the deceased witness, he should not be allowed the latitude of giving the mere effect or result of the deceased witness' testimony. The rule of competency requires a substantial narration of all the material facts stated by the deceased witness on the former trial, and in the order in which he gave them, so far as may be necessary to a correct understanding of his meaning.

It is insisted, however, that if this be the rule in civil cases, it does not apply in criminal cases, especially cases affecting life. An opinion appears prevalent with a part of the legal profession in this country, that in *criminal prosecutions* greater strictness of proof is required, and nicer and closer exceptions allowed, than in *civil cases.* It is very true, that in criminal cases, and especially those involving the life of the accused, courts proceed with greater caution, particularly in regard to the *degree* or *quantity of the evidence* necessary to a conviction. But whatever indulgence the humanity and tenderness of judges may have allowed in practice in favor of life or liberty, it appears to be well settled, that the rules of evidence, in civil and in criminal cases, are the same. Russell, in his standard elementary work on crimes and misdemeanors, 2d vol., 725, says: "There is no difference as to the rules of evidence between criminal and civil cases. What may be received in one case may be received in the other; and what is rejected in the one ought to be rejected in the other. A fact must be established by the same evidence, whether it is to be followed by a criminal or civil consequence." *Rex* v. *Watson,* 3 Eng. C. L. Rep. 291 ; *Murphy's Case,* 34 Eng. C. L. Rep. 402 ; Roscoe's Criminal Ev. 1 ; *U. S.* v. *Britton,* 2 Mason's Rep. 464 and 468 ; Greenl. on Ev., 1 vol., sec. 65.

In regard to the very question under consideration in the case before us, no distinction has been drawn in any of the adjudicated cases, as to the rule of evidence between civil and criminal cases, except that which has been claimed to result from the operation

of the provision in the bill of rights; and that, if it prevailed, would amount to an entire interdict of the testimony in criminal cases. I know of no case where it has been held, that while the substance of what a deceased witness testified on a former trial is competent in civil cases, such testimony must be restricted to the exact words, in criminal cases. The rule of evidence has been treated as one applicable alike to either class of cases; and a considerable proportion of the cases above cited, where the rigid rule has been repudiated, are criminal cases.

And there does not seem to be any well founded reason for requiring the exact words of the deceased witness in this testimony, and dispensing with the rule in other instances, in criminal cases, where a witness is called on to prove words spoken, as the confessions or admissions of the party, statements which are a part of the *res gesta,* the declarations of co-conspirators, testimony in respect of which the accused has been indicted for perjury, declarations made *in extremis,* and numerous other instances of words spoken, where nothing more than the substance has ever been required. The same reason which would require the precise words in the one instance, would equally apply in the other; and the same principle which would admit the substance to be given in the one instance, would admit it in the other.

3. It is insisted that the court erred in refusing to rule out the testimony of Logan, on the ground that it appeared, from his own statements, that he was unable to give the entire substance of all the testimony of the deceased witness. There is no foundation shown for this allegation of error, unless it be in reference to the rebutting testimony. It is true, the bill of exceptions discloses several circumstances in the testimony of Logan, on his examination in chief, and on cross-examination, tending to weaken confidence in the accuracy or certainty of his testimony, which was very proper for the consideration of the jury. But it is not shown in Logan's own testimony, so far as set out in the bill of exceptions, that there was any matter in the examination in chief, or cross-examination of Mary Clinch, *shown to have been material to the issue,* which was omitted by Logan, or which he was unable to state. It appears that " his impression was very indistinct as

to the reason Mary Clinch gave for allowing James Summons to tie up her foot;" that "he did not recollect whether she was asked about the kind of rag that was used or not;" "that he thought she said there was no meat got for supper, but his notes said she could not tell;" that he did not recollect some of the questions asked, etc. Had the question been, whether Logan had given the testimony of the deceased witness in *ipsissimis verbis*, this matter might have been material; but, as it is, the materiality of it, except as matter for the consideration of the jury, is not disclosed in the bill of exceptions. It was incumbent on the plaintiff in error to state, in his bill of exceptions, enough of the case to show the *materiality* of the subject matter of his complaint, before he could entitle himself to a reversal of the judgment.

But it appears that Logan was called to rebut the testimony offered in the defense, by way of impeaching a witness for the accused; and, with this view, he undertook to narrate the testimony of Mary Clinch, given for the same purpose, and at the same stage of the case, on the former trial. And it was when giving this testimony in rebutter, that Logan admitted that he had no recollection of a certain passage, in his notes of the testimony of the deceased witness in rebutter on the former trial; and, in consequence of which, he was unable to explain the connection in that part of the testimony. This admission of Logan, according to the rule of competency insisted on, entitled that party to have the whole of Logan's testimony *in rebutter* ruled out, but no more. It could not have affected the testimony given by him in chief. And, upon this ground, the court was not asked to exclude from the consideration of the jury Logan's *testimony in chief*, or *even all* his testimony in rebutter. The court was asked, however, to rule out that part of his testimony in rebutter, which was connected with the passage in his notes which he could not explain; and the court having accordingly ruled out all that part of Logan's testimony to which objection was made, the accused cannot now complain, that the court did not *sua sponte* rule out the balance of Logan's rebutting testimony, which

it was the right of the accused, as it seems to have been his choice, at the time, to leave before the jury.

Again, it is urged that the competency of Logan as a witness, depended on his ability to narrate *all* that Mary Clinch had testified to on the former trial, and that, it having been made to appear by the testimony in the defense, that he had omitted to state certain matters to which she had testified, his testimony should have been for that reason rejected by the court, and excluded from the consideration of the jury. It appears from the bill of exceptions, that two witnesses, called in the defense, testified that they had heard Mary Clinch testify on the former trial, took notes of her testimony, could not state the substance of all her testimony, but that each testified to " *certain matters* " stated by her in her testimony, which were omitted by Logan in his testimony. What these certain matters were, which are said to have been omitted, and whether they were *material* to the issue or not, is not disclosed in the bill of exceptions.

When a witness is called to testify to the matter related by a deceased witness on a former trial, it is essential to his competency, first, that he should have been present, and heard the deceased witness testify ; and second, that he have such accurate recollection of the testimony that he will, on his oath, *assume* or *undertake* to narrate it in such detail as the rules of evidence require. These are the *tests* of the *competency* of the witness. Upon this, there does not appear to be any conflict in the adjudicated cases, either in England or in this country. *Miles* v. *O'Hara*, 4 Binney R. 108 ; *Pegram* v. *Isabell*, 2 Hen. & Mumf. R. 193 ; 2 Cowan & Hill's notes on Phillips' Ev. 578.

Now, Logan swore that he was present on the former trial, and heard all the testimony given by Mary Clinch, and that he could give the substance of all she testified from his recollection, aided by reference to his notes. The requirements of the rule, therefore, touching *his competency as a witness*, being thus satisfied, he was very properly permitted to testify. If any objections, therefore, can be made on the ground of *competency*, they must have reference to the competency of *the testimony* given by Logan, and not to his competency *as a witness*. It would seem to

be important to an accurate understanding of the subject before us, that the distinction between the *competency of the witness* and the *competency of the evidence* should not be lost sight of.

It is essential to the competency of this kind of evidence, 1st, that the statements on the former trial, given by the witness since deceased, should have been on oath ; 2d, between the same parties, and touching the same subject matter ; 3d, on an occasion where opportunity for cross-examination was given the person against whom it is now offered ; and 4th, that the matter sworn to by the deceased witness on the former trial be stated *in all its material parts.* These are the *tests of the competency of the evidence* to be deduced from the reported adjudications touching the subject.

It was essential, therefore, to the competency of this testimony that the substance of *all* the testimony of the deceased witness should be given. By testimony is meant, of course, what was *material,* for any matters stated not material, were not evidence.

If it should appear, therefore, that any material part was left out, or if it should appear that, although the substance of *all* the testimony given by the deceased witness in chief had been stated, yet that the testimony on cross-examination had been omitted, the whole should be excluded as incompetent. On the trial of this case, had it been *apparent* to the court when the evidence in chief on the part of the State was closed, that *all the testimony* of the deceased witness on the former trial had *not* been given, but that material parts of it had been omitted, it would have been the duty of the court to have ruled it out as any other incompetent evidence. But if it had become a question in the case, whether all which the deceased witness had sworn to, had been stated or not, the determination of that question fell properly within the province of the jury, and would have been preliminary to the consideration of this evidence in the case. This is not unusual in practice. It is a frequent occurrence, that the authority of an agent becomes a question of fact to be passed on by the jury, *preliminary* to the consideration of the declarations or acts of the agent, as evidence against a party in the case.

And on the trial of this case in the district court, after testimony had been given on the part of the defense, tending to show that " *certain matters* " in the testimony of Mary Clinch on the former trial, had been omitted in the statement of her testimony by Logan, it became a question for the jury, in deciding on the weight of the evidence, whether, in respect to these matters, (if they were material,) the testimony for the State, or that on the part of the defense, was to be relied on. And in this connection it may be observed, that in view of the fact that Mary Clinch, while living, had testified on this subject matter on two different occasions, at each of which she had been subjected to a searching cross-examination, running into great minuteness of detail, by able and astute counsel on behalf of the accused, marking and noting every expression made by the witness; and that, afterwards, Logan, when called on two several occasions, to narrate what she had sworn to, was subjected to a like scrutiny in his examination, it is not a little remarkable, that a wider field was not opened for controversy about conflict, confusion and uncertainty in the testimony, than that which is disclosed in the bill of exceptions.

If, on the trial of the cause below, the accused had succeeded in establishing by the testimony given in the defense, that Logan had failed to detail all the material parts of the testimony of Mary Clinch on the former trial, and that the same was not in evidence before the jury, all the testimony given to prove what Mary Clinch had sworn to, should have been excluded or laid out of consideration by the jury. And to this effect the district court very properly instructed the jury. But if, in proving that Logan had omitted to state certain matters, to which Mary Clinch had deposed, the accused, by his own witnesses, supplied the deficiency and proved the omitted matters, so that all the testimony of Mary Clinch thus came before the jury, the question arises whether this was not sufficient for the competency of the testimony. And this brings me to the last inquiry in the case.

4th. Was there error in the charge of the court to the jury, that if they should find that Logan had not stated the substance of *all* that the deceased witness had sworn to on the former trial,

they should not, for that reason, exclude it from their consideration, provided, that by taking his testimony in connection with the testimony of other witnesses, they were satisfied that they had the substance of all the testimony given by Mary Clinch on the former trial?

If the requirement, that the matter sworn to by the deceased witness should be given in *all its material parts,* went to the *personal competency* of the witness, or each witness called on to testify to it, instead of the *competency of the evidence,* then, whenever in any stage of the case, it should be made to appear that the witness had failed in any material part, to give the whole matter to which the deceased person had deposed, the witness would have to be rejected as incompetent, and his testimony excluded. But inasmuch as this requisite goes to the competency of the evidence, a very different question arises. True, it is essential to the competency of the evidence, that the matter sworn to by the deceased witness, be given in all its material parts. But since the rule applies only to the competency of the evidence, what difference does it make in reason, whether it all come, from one or more witnesses? For instance, suppose that one witness heard all the testimony of the deceased witness on the former trial given on the examination in chief, and no more, while another witness heard all the testimony given on the cross-examination. Shall the testimony be excluded, because it cannot all be given by one witness, when it can be all, with equal accuracy and certainty, had, in distinct parts, from two witnesses? The requirement of the rule is satisfied, provided *all* that the deceased witness had sworn to be given to the jury. There can be no substantial reason for requiring it all from one witness. And the rule as to the competency of the witness is answered, if he heard the deceased witness testify, and will, upon his oath, *undertake* to state the whole, or all of any particular part, which he is called to prove. 1 Greenl. Ev., sec. 165. So that, if a witness called to prove either the whole, or any particular part, of what the deceased witness swore to, by mistake omits some matter, which is afterwards supplied by another witness the competency of the evidence is not, on this account, affected. This

view of the subject is fully sustained by the decision of the supreme court of North Carolina in *Ballenger* v. *Barnes*, 3 Devereaux Rep. 460. In that case, after the plaintiff had given evidence of the testimony of the deceased witness on a former trial, the defendant proposed to stop the progress of the plaintiff's evidence, and prove by other witnesses that the deceased witness had deposed to other matters which the plaintiff's witness had not stated. The court, however, refused to allow this; but after the plaintiff had closed his testimony, the defendant was allowed to give this evidence, and accordingly did prove other facts deposed to by the deceased witness on cross-examination, which had not been stated by the plaintiff's witness, and "which were *material*" to the defendant. And for this reason, the defendant then asked the court to direct the jury to disregard all the testimony proving what the deceased witness had sworn to, which the court refused to do. The supreme court of North Carolina, after full argument, and in a well considered case, held this not to be error.

The supreme court of Vermont, in the case of *The State* v. *Hooker*, heretofore referred to, has substantially recognized the same doctrine. There are numerous other cases bearing some analogy to this; and I have been unable to find a single case, where it has been held to be essential to the competency of such evidence, that the statements of the deceased witness on the former trial, be given in full by a single witness, or confined to the testimony of one witness.

Our conclusions, upon the several questions presented in this case, have been reached on the most mature and patient investigation, and with a full sense of the importance of the case to the accused on the one side, and to the safety of the community on the other. And it is highly satisfactory to the majority of the court concurring in this opinion, to be able to say, that they are free from all doubt in the conclusions which have been expressed.

Judgment of the district court affirmed, and Friday, the 17th day of April next, appointed as the day for the execution of the sentence.

BOWEN, J., dissented, holding—

1. That the admission of Logan to prove what a dead witness had sworn to on a former trial, was a violation of that clause of the 10th section of our bill of rights, which provides " that in. *any trial in any court*, the party accused shall be allowed to meet the witnesses face to face.

2. The testimony of Logan, as detailed by himself, showed his inability to give the *substance* of all that was sworn to by the deceased witness; wherefore he was disqualified to give evidence in that particular, against the prisoner.

3. The court below erred in directing the jury that if Logan had failed to give the substance of *all* of the dead witness' evidence, that therefore they should not entirely reject the testimony, provided that taking his testimony and that of the *other witnesses* who attempted to detail the evidence given by the deceased witness, they were satisfied that they had the *substance* correctly, of all her testimony.

4. The jury should have been instructed that if they found that Logan had not given correctly the substance of *all* the *former testimony*, (either from his own disclosures made upon the witness stand, or from the examination of other witnesses called by the prisoner,) they should, for that reason, reject altogether his statements, and not regard them as evidence against the prisoner.

5. The rule has never been carried so far as to allow testimony of a witness on a former trial of the cause, who has since deceased, to be given in evidence in *part* by one witness, who may recollect a *portion*, but not the *whole* of it, and in *parts* by other witnesses who may be able to detail *other* portions *less* than the whole of it. That which confers on a witness competency in such cases, to detail *any* of the former testimony, is his ability to give from memory the *substance of all* that the deceased witness testified throughout the entire examination of such witness.