# Ludwig *against* Leonard.

An agreement by one of several heirs of an intestate to sell and convey all his interest in the real estate, " except so much of said estate as shall be coming to the said E at the decease of the widow," is to be construed to mean an agreement to sell and convey two-thirds of the interest of the vendor in his father's estate.

The evidence necessary to establish a sale of land by parol must be clear and positive.

ERROR to the Common Pleas of *Cumberland* county.

This was an action of ejectment by Ludwig & Kneedler against William Leonard to recover the one-fifth of the one-third and the one-fourth of another fifth of a house and lot in Carlisle. Christian Leonard died in 1825 seised of the property, leaving a widow and six children, of whom Edward Leonard was one. On the 23d December 1841, the plaintiffs obtained a judgment against him, upon which executions were issued, and his interest in the property in dispute was levied and sold to the plaintiffs and conveyed to them by the sheriff on the 15th January 1844. Margaret, another of the heirs, died intestate and without issue in 1840. The defendant, to maintain the issue on his part, gave in evidence the following agreement:

[Ludwig v. Leonard.]

" It is agreed this 25th January 1831, between Edward B. Leonard of the one part and William Leonard of the other, both of the borough of Carlisle, and legal heirs of Christian Leonard, late of said borough, deceased, died intestate, seised in his demesne of certain real estate situate in the borough of Carlisle; and that whereas, the said Edward, for and in consideration of the sum of $600, the receipt whereof is hereby acknowledged, doth bargain, sell and release unto the said William all his interest in said real estate except so much of said estate as shall be coming to the said Edward at the decease of the widow of said Christian.   Witness our hands and seals the day and year first above written."

Proof was then given that the purchase money mentioned was paid in full.   The defendant then gave in evidence the following assignment by Margaret Leonard to Sarah Leonard:

" I, Margaret Leonard, daughter of Christian Leonard, late of Carlisle, deceased, who died intestate, for good causes and consideration, do by these presents transfer and assign to my sister Sarah Leonard my share, right and title and interest due, or to become due to me out of my said father's estate in the hands of William Leonard my brother, to be paid by him, being about the sum of $200 more or less.   Witness my hand and seal the 30th December 1840."

Sarah Leonard was examined as a witness and testified that in 1835 the heirs had a meeting with the view of settling their father's estate, and that the agreement among the heirs was that William was to get the real estate; she thinks it was not in writing.   She also said that Margaret often wished William to have a release; she told him so.

The proof was that the family lived together in the house except Edward, and that William had made valuable improvements. Releases from the other heirs to William were given in evidence.

The plaintiffs requested the court to charge the jury on the following points:

1. That the agreement between Edward Leonard and William Leonard, of the 25th January 1831, does not convey all the interest of Edward Leonard in the land in dispute.

2. That under the exception in said agreement, to wit: " Except so much of said estate as shall be coming to the said Edward at the decease of the widow of the said Christian," the interest of the said Edward in one-third of the real estate of his father did not pass to the said William Leonard.

3. That by virtue of the sheriff's sale to the plaintiffs all the estate of Edward Leonard in the land in controversy, not conveyed by him to William Leonard, was vested in said plaintiffs, and they are entitled to recover whatever the same may be in this suit.

4. That the sale of Margaret to Sarah, if there was a sale, and from Sarah to William, being unrecorded are fraudulent and void as against the plaintiffs.

[Ludwig v. Leonard.]

The Court answered the points as follows:

1st. The agreement between Edward and William Leonard of the 25th January 1831, conveys all the interest of Edward in the lot in dispute, except what is reserved by that agreement, which is or might be something or nothing, under the evidence upon which a construction is given to that paper. What the parties intended by this exception is left unexplained by any parol testimony in the cause. It was perfectly competent for the plaintiffs to have shown by parol testimony the meaning of the parties in this reservation. Not having done so, we are left to the paper and compelled to give it a legal construction such as we think it warrants. A widow, under our intestate laws, is entitled to the one-third of the lands for her life of which her husband died seised. All the interest then, which a widow has, terminates with her death, and on the happening of that event she has no interest in the real estate that could descend as a separate estate to her heirs, or those of her deceased husband. All that Edward acquired at the death of his mother, was the enjoyment of an increased portion of his father's estate which had descended to his heirs at his death, of which his mother had the possession during her life. The reservation therefore in this agreement, unexplained by parol testimony, vested in Edward no additional estate which was subject to the lien of a judgment, and which would be liable to a separate sale by the sheriff, from that estate which he acquired at the death of his father, or separate and distinct from that conveyed by Edward to William under this agreement of the 25th January 1831, which would justify a recovery by the plaintiffs in this suit.

2d. For the reasons already given we refuse this instruction.

3d. All the interest which Edward had in this property passed to the purchasers at sheriff's sale. That interest, however, may be something or nothing as you shall find from the evidence. If you are satisfied from the evidence that William was the owner of Edward's interest, and that Margaret had before her death agreed to sell this lot, &c. to William—received part of the purchase money from him, and transferred the balance to her sister Sarah, then Edward could acquire no interest in this estate at the death of Margaret intestate, which would vest in the purchasers at sheriff's sale a right to any portion of this property. The plaintiffs must recover on their own title, and not because the defendant's is not as strictly legal as it might have been. It is not indispensable to a man's title that he have a regularly executed deed. If he buys by parol, pays his purchase money, and enters into possession of the property, his possession is notice to others, sufficient to put them on enquiry as to his mode of holding; and would be sufficient to protect him in that possession against the purchaser of the legal title under a sheriff's sale. It is true a deed conveys the legal title, but if all the purchase money be paid, the purchaser of the legal title, under a judgment against the

[Ludwig v. Leonard.]

vendor, would acquire no such interest in the property as would enable him to disturb the purchaser in his possession. It will be for you to say whether William Leonard did buy this property under this family arrangement and pay for it as contended for by his counsel, or not.

4th. We cannot instruct you as matter of law, under the circumstances in evidence in this cause, that the non-recording of Margaret's transfer to Sarah or William's agreement with her, makes them fraudulent and void.

The plaintiffs excepted to the charge.

*Brandebury* and *Biddle*, for plaintiffs in error.
*Watts* and *Reed*, for defendants in error.

The opinion of the Court was delivered by

Rogers, J.—Both parties claim under Christian Leonard, who died seised of the premises, intestate, leaving a widow and six children, one of whom, Margaret, is since deceased. To the November Term 1841, the plaintiffs, Ludwig and Kneedler, obtained judgment against Edward B. Leonard, one of the heirs, and on a *venditioni* his interest in the house and lot was sold, and conveyed by the sheriff to the plaintiffs. This gives the plaintiffs a *primâ facie* title; but the defendant resists the right to recover on an article of agreement, by which he contends Edward conveyed his whole interest in his father's real estate to him, and an alleged parol sale of Margaret's interest to him, or an agreement to convey to her sister, Sarah Leonard.

The agreement between Edward and William Leonard is in these words: "It is agreed, this 25th January 1831, between Edward B. Leonard of the one part, and William Leonard of the other, both of the Borough of Carlisle, and legal heirs of Christian Leonard, late of said Borough, deceased, died intestate, seised in his demesne of certain real estate situate in the Borough of Carlisle; and that whereas, the said Edward, for and in consideration of the sum of $600, the receipt whereof is hereby acknowledged, doth bargain sell and release unto the said William all his interest in said real estate, *except so much of said estate as shall be coming to the said Edward at the decease of the widow of said Christian.*"

In the construction of all instruments of writing *inter partes*, the intention is the governing rule. Thus, the words of an indenture, executed by both parties, are to be construed as the words of both; for although delivered as the words of one party, yet they are not his words only, but the other party has given his assent to every one of them. In this way, an indenture is distinguishable from a deed poll, which shall be taken most strongly against the grantor. *Shep. T.* 177. It is also a cardinal rule in the interpretation of all instruments of writing whatever, that the construction be made on the entire deed, and not merely disjoined parts of it;

[Ludwig v. Leonard.]

and that every part of it be (if possible) made to take effect; and no word but what may operate in some shape or other. *Shep. T.* 176; 1 *Buls.* 101; *P. Will.* 459. Taking this to be the rule, the objection to the construction given by the court to the agreement is, that it rejects altogether the exception, which is an essential part of the contract. The court give it the same meaning as it would bear if those words were stricken entirely out of the agreement. But this is contrary to the rule, that every part of it (if possible) is to take effect, and that every word must be permitted to operate in some shape or other. This, be it observed, is an exception and not a reservation, nor is there any repugnancy between the exception and the grant.

But let us inquire whether it is possible, by giving every word of it its proper signification, it may not be so interpreted as that the different parts of the instrument may stand very well together. It does not strike me that it is very difficult to understand the reason of introducing the exception, or the manner in which it operates upon and modifies the previous part of the agreement. When an intestate leaves a widow and lawful issue, by the third and fourth sections of the Act of 1794, the widow is entitled to one-third of the real estate during life, and the remaining two-thirds immediately descends to the children. At the death of the intestate, two-thirds goes into their possession, and one-third into the possession of the widow. That part, therefore, which remains after taking out her life estate, in common parlance, and perhaps in legal contemplation, takes effect only on the death of the widow. It is certain that until this event the heirs have no immediate enjoyment or possession of it. So, when the real estate is appraised, the widow's third remains a lien on the land, the interest to be paid to her annually; the principal to the heirs after her death. Keeping this in view, it furnishes the key to the intention, and enables us to give the agreement such a construction as to give every word its legitimate effect. The words " except so much of said estate as shall be coming to the said Edward at the decease of the widow," obviously mean that part of the estate, whether it be real estate or money, which remains after deducting the two-thirds to the heirs and the one-third during life to the widow, or the reversionary interest in the widow's part of the real estate, or the money which by operation of law is a substitute for it. It is very obvious the exception was introduced for some purpose, and it is equally plain that Edward did not intend to part with all his interest in the estate. It can therefore be referred to nothing else; there is no medium between that interpretation and rejecting that part of the agreement altogether; the latter of which is to be avoided, as we have seen, if possible. Besides, the interpretation is neither repugnant nor unreasonable, nor is there an insuperable difficulty in understanding the reason of the exception. It was easy to ascertain the value of the two-thirds, but not equally so to agree

as to the price of that portion which remained after the termination of the life estate; it depended on the contingency of the death of the mother, a risk which neither the vendor nor vendee may have been willing to run. Besides, (operated upon by these considerations), it is by no means unusual for heirs to dispose of all their share or interest in the real estate with a reservation such as is contained in this agreement, expressed, it is true, in language rather more intelligible than that used by these parties.

Next, as to the disposition of Margaret's share. I have had some difficulty in understanding on what grounds precisely the defendant rests this part of the defence, whether on a sale to Sarah or a sale to himself, directly; but whether on one or the other, it equally avails him, as the plaintiff must recover on the strength of his own title. The case must be viewed, therefore, in both aspects.

The sale to Sarah Leonard depends on the meaning of a release or assignment, in the following words:— " I, Margaret Leonard, daughter of Christian Leonard, late of Carlisle, deceased, who died intestate, for good causes and considerations do by these presents transfer and assign to my sister Sarah Leonard, my share, right and title and interest due, or to become due to me out of my said father's estate, in the hands of William Leonard my brother, to be paid by him, being about the sum of $200 more or less." This instrument does not purport to assign or convey real estate, but the proceeds of real estate and personal estate. It is absurd to say of real estate that it is due, or that it becomes due; such expressions are only applicable to personal property. And this is further probable from the fact that about the sum of $200 would be coming to her from William on settlement, as it is fair to believe he received the rents and some part at least of the personal estate. And what is conclusive as to this is, that Sarah, who was examined as a witness, does not say that Margaret conveyed to her, or intended to convey, her interest in the realty. Her evidence, as far as it goes, tends rather to prove that it was sold to William.

But did Margaret sell her interest to her brother William, is the next inquiry? It is not pretended there is any written contract. It depends altogether on parol proof. As a general rule, contracts, as to real estate, must be in writing; and to take a case out of the statute upon the ground of a parol sale, it is indispensable that the contract be established by clear unequivocal proof, and that it be definite in its terms. If the terms are uncertain or ambiguous, or are not proved by clear and satisfactory proof, a specific performance will not be decreed. No title passes to the vendee. A Court of Equity will not, nor should a jury be permitted to deprive another of his land, on uncertain and inconclusive inferences. Now what proof was there that there was any contract whatever, either written or parol, for the sale of this pro-

[Ludwig v. Leonard.]

perty? It amounts to this and no more, that men were appointed who performed the duty to value and appraise the estate belonging to the heirs, real and personal, and to a presumption, which is a fair one, that this was done with a view to a settlement, and to an intended purchase by William. But that this design, though contemplated, was consummated either before or after the valuation, is a mere matter of conjecture. Sarah, who must have known the fact, if it was as is contended, does not prove a sale. In 1815, she says, my sister had a meeting in reference to the settlement of my father's estate. My sister Margaret often wished William to have a release. She told her she wished he could have a release. The agreement among the heirs was that William was to get the real estate. She frequently heard Margaret wish that William should have a release. All that can fairly be collected from the testimony is, that it was the common understanding that William, if he desired, should be the owner of the real estate at a fair valuation. This would seem particularly to have been the wish of Margaret, and her expressions, repeatedly made, indicate her regret that he had not become the purchaser. She is sorry that William had not a release; or, in other words, for some reason, she regrets William was unable or unwilling to purchase the property. Her expressions are unmeaning and idle on any other supposition.

Besides, there is no proof of any contract nor of any change of possession in pursuance of a contract. William had and continues to have possession of the property as a tenant in common with the other heirs. No distinct possession by him has been proved. And as to the improvements, they amount to *nothing*, unless some evidence is given of a contract by which William became the owner. Improvements, as it appears, were made, as well before as after the time of the alleged purchase. They were made by him as tenant in common, and the cost of these improvements was an item in the valuation made by the men specially selected for that purpose. There was no proof that a dollar of the purchase money was ever paid. If there was a contract, when was it made, what were its terms and conditions, and what part of the purchase money, if any, was paid? These are questions to which you may look through the testimony in vain for an answer. In all these essential particulars the evidence is deficient; and to decree a specific performance on such proof would in effect repeal the Statute of Frauds.

Judgment reversed, and a *venire de novo* awarded.