*Hord & Ewing,* for appellant.

*Scobey & Pound,* for appellee.

---

## Horne and Another *v.* Williams.

Practice.—A motion for new trial on the ground that "the court erred in giving, over defendants' objections and exceptions, the charges to the jury," and that "the court erred in refusing to give charges moved by the defendants," is bad for failing to point out the specific errors relied on.

Same.—But see decision overruling petition for rehearing in this case.

Evidence—Statements of Deceased Witness.—All the facts stated on a distinct subject by a deceased witness, may be proved without giving in detail all his testimony. It is sufficient to prove the substance of the

statements of a deceased witness without giving the precise words sworn to by him.

APPEAL from the *Delaware* Circuit Court.

DAVISON, J.—The complaint alleges, in substance, that the appellee, who was the plaintiff, employed *Horne* and *Slack* as surgeons to reduce and cure her then fractured thigh-bone for a certain reward, etc. And, having accepted and entered upon such employment, it became and was their duty to set and adjust the fractured limb in a skillful, careful, and diligent manner. Yet they, not regarding their duty, did not skillfully set and adjust the same; but on the contrary, etc., conducted their employment in an improper, unskillful, and negligent manner, to the great injury of the plaintiff. Wherefore she is damaged, etc. Answer by a denial. Verdict in favor of the plaintiff for $2,000. Motion for a new trial denied, and judgment, etc.

Among the various causes assigned for a new trial, we find the following: "The court erred in giving, over the defendants' objections and exceptions, the charges to the jury." "The court erred in refusing to give charges moved by the defendants." These causes have also been assigned for error; but they are not available, for the reason that they do not point out, with any degree of certainty, the specific errors relied on. *Robinson* v. *Hadly*, 14 Ind. 417; *Elliott* v. *Woodward*, 18 *Id.* 183. The following appears in a bill of exceptions: "*Dr. Geo. W. Edgerle*, who testified on a former trial, has since died; and *David Nation*, having been called, testified as follows: On a former trial of this case he, witness, wrote down the testimony, amongst which was that of *Dr. Edgerle*, by the appointment of the court, with the consent of the parties; and, having thus taken it down, he either read it to the witness, or *Dr. Edgerle* read it himself. Some words were left out of the written evidence; but he, *Nation*, tried to take down substantially what *Edgerle* said, and thought he succeeded, using substantially the words used by him, though not all of them." Plaintiff thereupon offered to read the

written evidence so taken; but her offer was refused, and she then proposed to prove by the witness, *Nation*, what the testimony was as given by *Dr. Edgerle*, on the former trial, which proposal was, over the defendants' objection, allowed. The witness then proceeded thus: "I do not recollect all *Dr. Edgerle* said upon all points; think I do recollect what he said in reference to the shortness of the limb, his language as to the length of the limb compared with the other. He said, as to that point, that the limb was lapped one inch, and that made it two inches shorter. He was present at the examination of the limb by physicians before the trial. On cross examination, he said he was mistaken about the lapping; that the lapping of one inch would only make it one inch shorter, but it lapped two inches, and was two inches shorter than the other limb. He said the fracture was transverse, slightly oblique. A bone was then presented to him, and he was asked if the fracture in this case was as oblique as that. He said it was not. He was asked how he could tell. He. said he could.feel the end or edge of the bone through the soft part of the flesh; and having been asked the cause of the limb being in the condition it then was, it being too short, he said it was the lapping of the bone."

Against the admission of this testimony the appellant assumes two grounds: 1. The witness was allowed to testify as to a detached portion of the testimony given by the deceased. 2. The precise language used by *Edgerle* in giving his testimony was not proved. The first ground is not well taken. The witness, as we understand the record, was not called on to give in detail all the testimony of the deceased, but simply all the facts detailed by him on a distinct subject. He professed to be able to testify as to these particular facts, and was, as to them, examined. There is nothing in this inconsistent with a correct rule of practice. 1 Phil. Ev., p. 395, note 115.

The second assumed ground involves a question of more difficulty. In *Ephraims* v. *Murdock*, 7 Blackf. 10,

it was held that the "precise words of the deceased witness, and not merely the substance of them, must be proved." But, in *Ward* v. *The State*, 8 Blackf. 101, the court, though it admits the rule as laid down in *Ephraims* v. *Murdock*, say that its "justice and policy" have been "seriously doubted;" and in *Summons* v. *The State*, 5 Ohio State Rep., it is decided to be sufficient "if the witness is able to state the substance of what was sworn to on the former trial." The decision just cited is well considered, and was made in view of all the authorities bearing upon the point. Indeed, the weight of authority is very decidedly against the rule which requires the exact recital of the words used by the deceased witness. *Cornell* v. *Green*, 10 Serg. & R. 14; *The State* v. *Hooker*, 17 Ver. 659; *Wagers* v. *Dickey*, 17 Ohio R. 440; *Garrot* v. *Johnson*, 11 Gill. & Johns. 173; *Moore* v. *Pearson*, 9 Watts & Serg. 50. "The rule," says Ch. J. Gibson, "that the very words of the deceased witness must be given," when "applied with that degree of strictness, would be altogether useless in practice; for there is no man, be his powers of recollection what they may, who would be qualified to give such evidence, and if he should undertake to swear positively to the very words, the jury ought not, on that account alone, to believe him." *Cornel* v. *Green*, *supra*.

We are, therefore, of opinion that the rule in *Ephraims* v. *Murdock* should be so modified as to allow the substance of the statements of the deceased witness to be proved. This is, no doubt, in accordance with the current of the recent adjudications on that subject, and the result is, the court, in admitting the testimony, committed no error.

During the trial, *Dr. Helm*, having been produced by the plaintiff, testified that he was a practicing physician and surgeon, and had been such for thirty-two years. Thereupon the plaintiff asked him this question: "If the plaintiff had been laid on a bed and received no medical aid, how, if any, worse or better, would she be off now?" The question thus propounded was resisted by the defend-

ants, but admitted by the court and thus answered by the witness. If the plaintiff had simply been laid in bed, and no effort made to reduce the fracture, the limb would not have been in any worse condition, or shorter than it is; the foot is turned with the toes pointing out, as if it had been allowed to fall on the bed. To this answer there was also an exception taken.

We perceive no error in this ruling. The question and answer in effect relate to the condition of the limb and the probable effect of the course pursued by the defendants in their treatment of the case. This view being correct, the evidence was, it seems to us, legitimate.

The plaintiff then introduced and examined *Dr. McCullough* as a surgical witness, and the defendants, on cross examination, asked him, for the purpose of testing his qualifications as a surgical and medical witness, these questions: "What is insanity? What is a wound?" To the questions thus propounded the court sustained an objection and the defendants excepted. The phraseology used in propounding these interrogatories may have induced the court to believe that they were intended to insult the witness, and thereby embarrass, and lower him in the estimation of the jury; and this being the case, the court in the exercise of its discretionary power, had a right to say that the questions need not be answered. Moreover, the subject of insanity had no pertinency to the case, and the question, whether there was or not, technically, a wound, was not in issue. We think the proposed questions were not calculated to test the qualifications of the witness to estimate the character of the services performed by the defendant. An exception was taken to the evidence given by the witness, *Dr. McCullough;* but the point involved in that exception is not noticed in the defendants' brief, and will not therefore be considered by this court. See Rule 28 of the Supreme Court. Other points are made by the appellants, but they seem to have no important bearing on the merits of the controversy,

and will not be discussed, for the reason that, in looking into the record, we are fully satisfied that the verdict is right on the evidence, legally given to the jury.   2 G. & H. 122.

*Per Curiam.*—Judgment affirmed, with 2 per cent. damages and costs.

A petition for rehearing was filed in this case *January* 6, 1865, which was decided *January* 10, 1865, as follows:

### *On a Petition for Rehearing.*

RAY, CH. J.—In overruling the petition for rehearing, we do not wish to be understood as approving of the rulings in the cases of *Robinson* v. *Hadly*, 14 Ind. 417; and *Elliott* v. *Woodward*, 18 *Id.* 183; in reference to which we give no opinion, the point not being made in the petition for rehearing.

Petition overruled.

*Joseph S. Buckles, David Kilgore,* and *Carlton E. Shipley,* for appellants.

*Thomas J. Sample* and *Walter March,* for appellee.