Dawson *v.* Coffman and Others.

DAWSON *v.* COFFMAN and Others.

INJUNCTION.—WASTE.—Injunction by the owner of the fee to restrain the owner of the life estate from waste by cutting timber. The court instructed the jury as follows: 1. Waste is whatever does a lasting damage to the inheritance, and tends to the permanent loss of the owner in fee, or to destroy or lessen the value of the inheritance. What might be for the benefit of the life tenant, if a permanent loss to the owner in fee, is waste. 2. If the contemplated cutting, when done, would lessen the value of the fee after the death of the life tenant, the jury should find for plaintiff; if not, then for defendant.

*Held,* that the instructions were correct.

MOTION FOR NEW TRIAL.—Motion for a new trial; one cause assigned being that error of law occurred at the trial of the cause, which was excepted to at the time by the party, in this: that the court, in giving instructions to the jury, gave instructions contrary to law.

*Held,* that this was sufficient to bring in review all instructions specially excepted to at the proper time.

SAME.—OVERRULED CASE.—The decision in *Horne et al.* v. *Williams,* 23 Ind. 37, overruled on this point.

COMMON LAW.—The common law of *England,* and acts of Parliament of a general nature in aid thereof, prior to the fourth year of JAMES I, are, no statute contravening, in force in *Indiana* when applicable, but when inapplicable, the courts will modify to suit the requirements of our condition.

SAME.—WASTE.—The common law that cutting a standing tree is waste is inapplicable in this State.

## APPEAL from the *Marion* Circuit Court.

GREGORY, J.—This action was commenced by the appellant against the appellees to enjoin the commission of waste. *Ann Coffman,* by the will of her late husband, was the owner of a life estate in the lands on which the alleged waste was committed. *Dawson* was the owner in fee of two undivided thirds of the remainder. On the trial, the court instructed the jury as follows:

"Waste is whatever does a lasting damage to the inheritance, and tends to the permanent loss of the owner in fee, or to destroy or lessen the value of the inheritance. So what might be for the good and convenience of the tenant

for life, by clearing parts of the land, might at the same time be to the permanent loss of the owner in fee simple, and consequently waste. If the jury believe, from the evidence, that the defendant *Ann Coffman* intended to cut timber upon the land for sale, and employed persons to do such cutting, and that such intended cutting, if done, would lessen the value of the estate the plaintiff, *Dawson,* is to receive at the death of *Ann Coffman,* the tenant for life, then it will be the duty of the jury to find for the plaintiff. But if the jury believe, from the evidence, that such intended cutting or clearing would not lessen the value of the estate *Dawson* is to receive at the death of the tenant for life, then the jury should find for the defendant."

The plaintiff objected and excepted to each of these instructions.

The jury found a general verdict for the defendants, and in answer to interrogatories propounded to them, they found specially, among other things, that the premises on which the alleged waste was being committed consisted of seventy acres of cultivated and about fifty acres of wood land; that the defendant *Coffman* had sold to her co-defendant *Graham* the timber growing upon three acres of the wood land, to be cut into cord wood for the market, about six cords of which had been cut; that the defendants *Graham, McLaughlin* and another were engaged in cutting the residue at the commencement of the action; that there were more standing and growing trees on the farm at the date of the sale from *Coffman* to *Graham* than was necessary to afford sufficient wood and timber for the permanent use thereof; that the wood cut, and intended to be cut, was not designed for, nor necessary to be used on the farm; that the cutting of the trees, done and intended, was not an injury to the inheritance and reversionary interest of the plaintiff *Dawson.*

The plaintiff moved for a new trial for the cause, among others, " that error of law occurred at the trial of the cause, which was excepted to at the time by the plaintiff, in this,

that the court, in giving instructions to the jury, gave instructions contrary to law."

It is claimed that this is too general to raise any question in relation to the instructions of the court, and in support of this proposition the cases of *Robinson* v. *Hadley*, 14 Ind. 417; *Elliott* v. *Woodward*, 18 Ind. 183, and *Horne et al.* v. *Williams*, 23 Ind. 37, are cited. In the latter case, the present judges of this court, in overruling a petition for rehearing, say: "We do not wish to be understood as approving of the rulings in the cases of *Robinson* v. *Hadley*, 14 Ind. 417, and *Elliott* v. *Woodward*, 18 *id.* 183, in reference to which we give no opinion, the point not being made in the petition for rehearing."

In *Horton* v. *Wilson*, 25 Ind. 316, the reason assigned for the new trial under which the question arose was this: "3. Irregularities in the proceedings of the court." The error of law, for which a reversal of the judgment was sought, was the refusal to grant a change of venue. It was claimed that although the overruling of the motion was not excepted to at the time, the error was embraced in the motion for a new trial. The court say: "It might properly be embraced under the third specification, but the particular irregularity complained of should be specifically pointed out, and the attention of the court below thereby directed to the matter. *Barnard* v. *Graham*, 14 Ind. 322; *Medler* v. *Hiatt, id.* 405; *Snodgrass et al.* v. *Hunt*, 15 *id.* 274. The record is full of motions and questions which, if well taken, would be 'irregularities in the proceedings of the court'; to each of which that general specification would alike apply, and yet it does not specifically apply to any one of them."

In the case before us, the appellant had excepted to each of the instructions specifically. The cause for the new trial referred to the instructions excepted to. It is true that each of the instructions was not pointed out by its number, or a statement of its substance, but no one could fail to know that the court was called on to review its instructions to which the party had excepted. The case of

*Horne et al.* v. *Williams, supra,* is in conflict with this opinion and is overruled. The cases of *Robinson* v. *Hadley,* and *Elliott* v. *Woodward, supra,* do not go to the extent of the case of *Horne et al.* v. *Williams,* and it is not now necessary to express any opinion about the principle ruled in those cases.

A liberal administration, under the code, requires that we should look to the substantial right of a case, disregarding mere technical forms. But the ends of justice require that in the administration of the law order should be regarded, so that each party litigant may be fully heard and each cause fully considered in all its parts, that no undue advantage may be allowed to either party.

We cannot see that any injustice could possibly arise when the instructions were excepted to at the time they were given, and then the court, on the motion for a new trial, was notified that the party making the motion relied upon the errors of law occurring at the trial, and excepted to, in the giving of the instructions to the jury. Such a motion, we think, brings in review the entire instructions excepted to.

There were some instructions asked and refused, but, not being embraced in the motion for a new trial, they are not considered. We think the instructions given to the jury by the court below, a correct enunciation of the law on the subject of waste, as recognized in the *United States.* The common law of *England* on this question has received some modifications in this country, growing out of our condition. At an early day in this State, the common law of *England* and the statutes of the *British* Parliament, made in aid thereof, prior to the fourth year of the reign of JAMES I, of a general nature, and not local to that kingdom, were adopted by statute. Under this enactment, it has been repeatedly held that when our circumstances are materially different from those of *England,* so as to make any of the rules of the common law inappropriate, the courts will make such modifications as our condition requires. The

fact that a large portion of our territory consists of vast forests, requiring, in the advance of improvements and the increase of population, that these forests should be turned into cultivated fields, makes the rule of the common law that the cutting of a standing tree is waste wholly inapplicable. There is some conflict in the authorities in this country on this question; but we think that the weight of them, supported by reason, is in accordance with the charge of the court below.

Mr. *Washburn*, in his work on Real Property, says: "In the *United States*, whether cutting of any kind of trees, in any particular case, is waste, seems to depend upon the question whether the act is such as a prudent farmer would do with his own land, having regard to the land as an inheritance, and whether the doing of it would diminish the value of the land as an estate." 1 Wash. on Real Prop., § 6, p. 109.

It is urged that the special finding is inconsistent with the general verdict. We do not so regard it. The finding of the jury was in accordance with the law as announced by the court. There being no damage to the inheritance, there was no waste.

There are cross-errors assigned, but as the judgment is in favor of the appellees, we have not considered them.

The judgment is affirmed, with costs.

*N. B. Taylor, R. B. Duncan* and *J. Coburn*, for appellant.

*A. G. Porter, B. Harrison* and *W. P. Fishback*, for appellees.