### SOLOMON PILKINTON V. THE STATE.

On the subject of doubts, it is true there is a distinction between civil and criminal cases; in the former, the jury weigh the evidence, and after determining on which side there are the greater degrees of probability, or there is the preponderance of evidence, decide accordingly; but in criminal cases, as every man is presumed to be innocent until the contrary is proved, a mere probability that he may be guilty will not warrant a conviction; the evidence must be sufficient to satisfy the jury that he is guilty; and if there be a well founded, or reasonable doubt of his guilt—not merely speculative, imaginary or possible or conjectural, but a real doubt of his guilt, the jury ought to acquit.

The judgment in a criminal case will not be reversed because of the refusal of the Court to charge the jury upon the effect of a doubt in their minds as to the guilt or innocence of the accused, where the facts are clearly proved.

Where the jury found the defendant guilty of (petty) larceny, and assessed the punishment at a fine of thirty-seven and a half cents and imprisonment for one hour, it was held that a new trial ought to have been granted; and the judgment was reversed, on the ground that it appeared from the verdict, that the jury misapprehended the law and their duty, upon the case as presented by the evidence and the charge of the Court.

Appeal from Anderson. Tried below before the Hon. John H. Reagan.

Indictment for stealing twenty bushels of corn, of the value of twenty dollars, the property of J. A. Lawrence. Plea of not guilty. It was proved that defendant took a basket and several arms full of corn, from Lawrence's crib, at different times, and went with it into a stable were defendant kept his horse. A witness proved that from the appearance of the crib, he estimated that at least twenty bushels were taken. The circumstances were such as hardly to have proved a felonious intent, if the defendant had not denied the taking of the corn, when he was questioned about it by the owner; which, it was proved, he did. The defendant had been in the employment

of Fleming, who was cropping for Sturdevant, who was part owner of the corn ; and there was an effort to prove that Fleming had authority to take corn from the crib, and that defendant had taken the corn by Fleming's orders. Fleming had left that part of the country before the trial.

The Court charged the jury as follows : Larceny is where one secretly and feloniously takes and carries away the property of another. If you believe the prisoner took and carried away the corn of J. A. Lawrence, without his authority and consent, and for the purpose of appropriating it to his own use, or of depriving Lawrence of it, you should find him guilty. He could only excuse himself by showing that he had the authority of Lawrence, either directly from him, or from some one acting for him. If you find him guilty, you will determine, from the evidence, whether he is guilty of grand or petit larceny. If the corn stolen was of the value of twenty dollars or more, you should fix his punishment at hard labor in the penitentiary, for a term not less than one, or more than five years. But if you believe the corn stolen was of a value less than twenty dollars, you should fix his punishment at imprisonment in the county jail for any time not exceeding one year, and by fine of any sum not exceeding one hundred dollars. If you conclude he is guilty, and undertake to determine the value and amount of corn stolen by him, you can only charge him with the amount which the proof shows he stole ; and if it appear that a considerable amount of corn was missing, more than the proof shows he stole, you cannot conclude that he stole all that was missing, but only the portion the proof shows he got. The defendant cannot excuse himself on the ground that he took the corn under the orders and directions of Fleming, unless it has been proven that he took it by Fleming's orders ; and he would not be excused for taking it under Fleming's orders, if he knew he (Fleming) had no right or authority over the corn.

The following instructions were asked by defendant, and

refused : The defendant Pilkinton, by attorney, asks the Court to instruct the jury, that if they have a reasonable doubt, arising from the testimony, of the guilt of the defendant, they should acquit.

That if it appear from the evidence that the defendant took the corn through mistake, or under a well grounded belief that he was authorised to take it under a contract between Sturdivant and Fleming, they may acquit the defendant ; and that though said contract may have terminated, and Sturdivant may have forbidden Fleming to get corn from the crib, yet if it appear from the evidence that defendant did not have any notice of it, and that Fleming and the defendant had previously got corn there, the jury should acquit.

That to convict the defendant, the jury must believe from the evidence that the defendant intended to steal the corn, and if this intent does not appear from the evidence, they ought to acquit.

Verdict of guilty and punishment assessed at thirty-seven and a half cents fine and imprisonment of one hour.

Motion for new trial on account of error in the charge ; in refusing charges asked ; that the verdict was contrary to law and the evidence ; and for other errors.   Motion overruled, &c.

*R. A. Reeves*, for appellant.   The gist of the offence, and the presumption of innocence, were entirely excluded from the jury, in the charge given, and in refusing the charge asked by defendant.

*Attorney General*, for appellee.

WHEELER, J.   Considered in reference to the evidence, it is not perceived that there is any error in the charge of the Court, or in the refusal of instructions, to require a reversal of judgment.   It might have been more satisfactory, if the Court had given the third instruction asked.   But the charge sufficiently indicated, perhaps, the necessity of a felonious

intent, to constitute the crime charged. On the subject of doubts, it is true there is a distinction between civil and criminal cases : in the former, the jury weigh the evidence, and after determining on which side there are the greater degrees of probability, or there is the preponderance of evidence, decide accordingly ; but in criminal cases, as every man is presumed to be innocent until the contrary is proved, a mere probability that he may be guilty will not warrant a conviction ; the evidence must be sufficient to satisfy the jury that he is guilty ; and if there be a well founded, or reasonable doubt of his guilt,—not merely speculative, imaginary, or possible, or conjectural, but a real doubt of his guilt, the jury ought to acquit. In general, and especially where the evidence is of doubtful interpretation, or is not of so conclusive a nature and tendency as to exclude any reasonable doubt, it would certainly be proper to instruct the jury respecting their duty, if they have reasonable doubts, arising out of the evidence, as the Court was asked to instruct them in this case. But if they believed the witnesses, it is not easy to perceive any room for doubt, respecting the guilt of the accused. The Court doubtless thought the evidence did not call for the giving of the instruction, and if the witnesses were entitled to credit, we cannot say the Court was in error.

But although there may be no sufficient ground for reversing the judgment, in the ruling of the Court upon instructions, considered in themselves ; yet we think the verdict of the jury upon the case, as presented by the evidence and the charge of the Court, sufficiently manifests a misapprehension of the law and their duty on the part of the jury, to have required the awarding of a new trial on the motion of the defendant ; and we think it was error to refuse it. We are reluctant to believe that any twelve men of sufficient respectability to be chosen to sit as a jury, to pass upon the rights of person and property of their fellow citizens, could be so reckless of their duty as the guardians of the laws, the public morals, and the

rights of the citizen—so lost to a just sense of the punishment due to crime, as to measure the crime of larceny by a punishment of one hour's imprisonment and thirty-seven and a half cents fine, if they really believed the accused to have been guilty of the crime of larceny. We are loth to believe that a jury can be found in this enlightened Christian land, who really place so low an estimate upon crime. It is a supposition too incredible to be received without the most convincing proof; and then it would present too forbidding.and ominous a picture of the state of society amongst us, to be viewed with satisfaction, or contemplated without alarm. We must conclude, that, in fact, the jury did not believe the accused guilty of a felonious intent; but that, misapprehending the law and their duty,—owing perhaps to the want of a more full explanation from the Court of what is necessary to constitute such intent—they conceived themselves bound, under the charge of the Court, to find the defendant guilty; and that the punishment they imposed was the result of a secret conviction that the accused was not really guilty of any criminal intent. This seems to us the only natural and reasonable way in which to account for the verdict; and we think it must be the true explanation of it. But if such was their belief, the jury ought to have acquitted. It would be a mockery of judicial forms; it would be making the administration of criminal justice a farce, to go through with the forms of a grave criminal charge—an arrest—an examination before a magistrate—an indictment by the Grand Jury—the solemnity of a criminal trial at the bar—menacing the accused with a conviction of an offence which might deprive him of his liberty and stamp his character with infamy, and at the expense of the public, who usually throng the place of trial to witness the spectacle, and of the officers of the law, to attain such a result. It would be worse than mockery. The effect of such an exhibition, with such a result, must inevitably be to bring the administration of public justice into ridicule and contempt. It is not easy to perceive

from the statement of the evidence in the record, how the jury could hesitate to convict the defendant of larceny, if they believed the witnesses. But they were the judges of their credibility ; and may have discredited, in whole or in part, their statements. If so, it was their duty to acquit. They had no right to adopt any half way course, by way of compromise between criminality and innocence ; or a theft and a trespass ; and stamp with the infamous charge of larceny the character of the accused, if they did not believe, or were not satisfied of his guilt ; as from the estimate they have placed upon the act, we are constrained to conclude they were not. We are, therefore, of opinion that the Court erred in refusing a new trial ; for which the judgment must be reversed and the cause remanded.

Reversed and remanded.