## JEFF BLACK *v.* THE STATE.

1. EVIDENCE OF DECEASED WITNESS.—At a second or subsequent trial of a
   criminal charge it is competent for the prosecution to put in evidence the
   testimony given at a previous trial by a witness who has since died; and
   such testimony may be proved by a person who heard it given, and who
   can qualify himself to state the substance of it.  Such evidence is not in
   contravention of the constitutional right of the accused to be confronted
   with the witnesses for the state.

2. SAME—DYING DECLARATIONS.—The above ruling applies as well to dying
   declarations made by a party killed as to other facts testified to by the
   deceased witness.

3. SAME.—Objections to the admission of dying declarations must be inter-

posed at the trial in the court below; they come too late when raised in this court for the first time.

4. CHARGE OF THE COURT—PRESUMPTION OF INNOCENCE AND REASONABLE DOUBT.—The evidence adduced to inculpate the accused in the homicide was altogether circumstantial. At the trial below he asked the court to give in charge to the jury, in the language of Article 3105, Paschal's Digest, the presumption of innocence and the reasonable doubt, which the court refused. *Held*, error, notwithstanding that the court, in its general charge, had instructed the jury to acquit the accused if they entertained "a reasonable and well-founded doubt of his guilt, arising out of the evidence."

5. SAME—BURDEN OF PROOF.—Accused, being on trial for murder, asked the court below to instruct the jury that "the burden of proof to show the truth of the charge is at all times on the state." *Held*, that the refusal of the instruction was error.

6. SAME—REASONABLE DOUBT.—The indictment charged that the appellant was present, aiding and encouraging one W. in the murder of the deceased. At the trial the appellant asked the court to give in charge to the jury the reasonable doubt, with special reference to the question whether he was present at the commission of the crime. *Held*, that the request should have been granted; and see the opinion of this court as to the extent to which the doctrine of reasonable doubt should in such a case have been given in charge to the jury.

7. MURDER—CIRCUMSTANTIAL EVIDENCE.—It is not sufficient, in a case of circumstantial evidence, that the circumstances proved coincide with, account for, and therefore render probable, the hypothesis of guilt. They must exclude, to a moral certainty, every other hypothesis, or the jury must acquit.

8. SAME.—When the main fact in issue is to be deduced by inference from other facts, then each fact in the chain must be proved by competent evidence, and by the same weight and force of evidence as if it were the main fact in issue; and all must be consistent with each other, and with the main fact sought to be proved.

APPEAL from the District Court of Chambers. Tried below before the Hon. H. C. PEDIGO.

Two former appeals of this case are reported in 36 Texas, 366, and 42 Texas, 360, where the evidence will be found in sufficient detail.

In the opinion of this court will be found every other fact material to a clear comprehension of the rulings.

24

*Willie & Cleveland,* for the appellant, filed a concise but very forcible review of the evidence in the cause, to show its insufficiency to sustain the conviction.

*Likens & Stewart,* also for the appellant.   Counsel regard as one of the gravest errors committed by the court below, permitting a witness to testify as to what the testimony of a witness, then dead, in a former trial was, relative to the dying declaration of Green Butler, for the alleged killing of whom the defendant herein was indicted and put upon trial.   In the outset we will remark that if the ruling of Judge Pedigo—in admitting the witness Waters to testify as to what Mrs. Butler had sworn on a former trial were the dying declarations of her husband, addressed, while *in articulo mortis,* directly and especially to her, and not within the hearing of this witness—is to become the rule of decision, then does hearsay testimony assume the position for all time hitherto denied to it, and become the *best* testimony that can be offered.   In fact it will only be necessary to have circumstances *once* deposed to, to establish a fact, when the testimony will at once become an heirloom, to be transmitted from father to son in families ; a tradition in communities, with all the uncertainties of the imperfect memories through which it may be preserved—all the accretions and changes which will come with the lapse of time.   The latitudinous character given by this ruling to the one exception to the rule governing the admissibility of hearsay testimony, heretofore most jealously kept in restricted lines, in so far as criminal law is concerned, may well startle the understanding of him who has hitherto regarded that provision, in both the federal and state Constitutions, which declares that " the accused shall be confronted by the witnesses," as a settled rule of organic and statutory law.   A few decisions in England and America may have favored the admission of testimony as to facts deposed to on a former trial,

by a deceased witness, *where those facts were within the personal knowledge of the witness first testifying,* and even upon this question the weight of authority is difficult to fix; but we venture the assertion that no adjudicated case in criminal procedure can be found which furnishes a parallel ruling with that under consideration—which ever permitted testimony, upon a trial involving the life of a human being, that was "hearsay," three removes from the only lips ever capable of positively asserting its truth. This testimony went to the jury without even a semblance of an application of either of the two grand tests of truth required by the laws of evidence—the sanction of an oath and the right to cross-examine. Whose testimony was sought to be introduced by the state? Not Waters', for he knew no fact establishing the guilt of the accused. It was not the testimony of Mrs. Butler, for she, except from *hearsay,* was equally ignorant of any fact as to who fired the fatal shot. It was the *testimony* of Green Butler, giving the impressions made upon his excited and suffering brain, in the dim, uncertain twilight of departing day, and of the more clouded intelligence of a rapidly expiring life; and while he doubtless spoke as he was vaguely impressed, his utterances were not guarded by the solemn sanctity of an oath, nor were the accuracy and reasonableness of his conclusions tested by the truth-developing power of a cross-examination.

The appellee will doubtless in this court, as it did in the court below, assume and attempt to maintain that the testimony of Mrs. Butler, given from "hearsay" by Waters, is only cumulative; but we respectfully submit that this position is not tenable—in fact, not possible, with reason to support it—for the dying declarations of Green Butler, as testified to by his wife and Joe White, are the only original testimony which can by possibility fix the perpetration of the killing upon any particular individual, and these declarations were made to his wife, specially named by him at the

moment, and only in the hearing of Joe White and Ebby Lewis, the two, possibly mistaken, listeners to the last words of the dying husband to his weeping wife.

Then how and why is the testimony of Waters, who undertakes to swear what Mrs. Butler swore her husband would have sworn, to be considered as " cumulative?" The definition of the word, not only in its legal signification, but in its common and general acceptation, is a palpable and direct contradiction of the position taken. "Augmenting by addition"—what? Without the testimony of Mrs. Butler, as to dying declarations made by her husband, the state is without the initial point from which to begin its prosecution of any one for the killing of Green Butler, and absolutely without evidence to convict, for there is *no proof* of the guilt of the appellant in this case.

The authority relied upon to support the ruling of the court below, admitting the testimony of David Waters, is a decision of a former supreme court of this state in the case of *Greenwood* v. *The State*, 35 Texas, 587.

But this case is not analogous to the one under consideration, nor is either of the cases cited by the judge who submitted the opinion, and whose decisions, he informs us in his opinion, he is "following." In all of them, as in *all others* to which we have had access, the testimony sought to be "reproduced" were *facts within the personal knowledge* of the witness who testified originally, and were not dying declarations, or, in other words, *hearsay* testimony.

We regret on many accounts that such a decision should be found in our reports, and particularly do we regret it because, notwithstanding its complete abrogation of a rule in the law of evidence, long and well settled in other American jurisdictions as well as in Europe, it ignores the repeated decisions of a bench whose opinions have been justly regarded by the bar of Texas as the perfection of juridical accuracy, and becomes the rule of decision with district

judges, who plainly announce from the bench that they regard the decision as palpably violative of well-settled principle in our own as well as other jurisdictions, but that they " feel bound to follow it, because it is a decision of our own supreme court."

After announcing the rule, as follows, " we are of opinion that evidence of the character in question is legally competent, and should be permitted to go to the jury in criminal as well as civil cases," the learned judge adds : " It would seem that such a rule should be adopted by our courts, if for no other reason than to protect the rights of the defendant." This is certainly an out-cropping of kindly judicial solicitude for the welfare of future defendants, but gratuitous, nevertheless, for the enlightened framers of our state Constitution had already guaranteed the " defendant " the right to be confronted by his accusers, and to him, and *not* to the state, belongs the privilege of waiving that "right." There is in this view of the case (if less " humanity ") more constitutional law and justice, we respectfully submit, than in the opinions from which we quote. See Art. 1, sec. 8, Const. of Texas ; also, *Hyde* v. *The State*, 16 Texas, 457 ; *De Warren* v. *The State*, 29 Texas, 346, and authorities there cited.

When the unqualified and emphatic language of the provision of our state Constitution, which says the accused " *shall* be confronted with the witnesses against him," is fairly considered, in connection with the peculiar and exceptional character of that species of testimony called " dying declarations, " and the restrictions with which the law-makers have thought proper to judge its admission at all, we feel that to enlarge the facilities for its perpetuation and introduction will be to make that a convenience which has heretofore, in the courts of all civilized countries, been merely tolerated as a rule from necessity. When the scope of that rule is sought to be enlarged, and made the authority

for the admission of *second-hand* hearsay testimony, so to
speak, it is high time to remind the courts, in making the
rule of the common and statute law in support of · their
ruling, that the provision quoted from the Bill of Rights,
in our state organic law, supplants the one and refuses to
tolerate the other.

It is doubtless well known to your honors that the rule
admitting, on trials of manslaughter and felony, the sworn
statements of a witness dead, duly taken by proper officer
and reduced to writing in presence of the accused, having
the right to cross-examine, signed by the witness and certi-
fied by the officer, had its origin more than three hundred
years ago, by the statute 1 and 2 Philip and Mary, chapter
13.    That statute and the amendments thereto " are early
enough in date to be the common law with us," and fur-
nished the rule above mentioned.    Let us see what were
the safeguards for defendants, provided by the statutes
referred to, in admitting such evidence.    The depositions to
be admitted, in case of death of a witness who had testified
on a former examination or trial, had to be of facts within
the knowledge of the witness (*not " dying* declarations"
or *hearsay* testimony), made in *presence of the accused;* that
he or his counsel had full opportunity to cross-examine the
witness ; to be signed and certified by an officer duly author-
ized by law for such purpose ; and it was expressly pro-
vided that " nothing should be returned as 'a deposition,
unless the prisoner have an opportunity of knowing what
was said, and of cross-examining the party making it."    See
Bishop on Cr. Pro., secs. 520, 521, 522, and 523, ed. 1866.

It will be observed that the one requirement, that the
testimony of the witness, sought to be introduced after his
death, *must be in writing,* taken as the statutes required,
insured accuracy in detail ; but this precaution has, by the
*progressive* and hastily considered legislation of many of
the states—our own being one—been removed ; but, fortu-

nately for defendants here, the Bill of Rights shields them from all harm that might ensue, the statute being in conflict with the constitutional provision quoted.

Suppose the declarations had been reduced to writing by the proper officer, and in all requirements a compliance with the statutes heretofore discussed had been made, whose testimony would it have been? And who is the witness against the accused? Certainly not Mrs. Butler; nor could she on the stand have been cross-examined as to the facts contained in the statement touching the identity of the parties, because she could not and would not have testified on that subject, and the deposition would have gone to the jury for what it was worth. This being true, then, the defendant was not " confronted with the witnesses against him."

If Mrs. Butler was not a witness against the accused, then what is the position of Waters, the witness who was permitted to testify as to what Mrs. Butler testified at a former trial would have been the testimony of her husband, had his deposition been taken?

Suppose, further, that this cause shall be remanded for another trial in the court below, and, before that trial can be had, Waters should die, and no other witness can be found who will undertake to swear what Mrs. Butler's testimony was on a former trial, will the testimony of a person who heard Waters testify on the trial of this cause, in the court below, be admissible? If so, then can " the line stretch out to the crack of doom," and hearsay testimony assume, in the law of evidence, a dignity of position never dreamed of by writers of the widest possible range of ideas in the construction of its rules.

If the provision in the Bill of Rights referred to does not mean what its simple, emphatic, and well-chosen language clearly imports; if its unmistakable purpose and effect was and is not to confer a " *right* " upon the accused,

then what does it mean, and how is it to be interpreted? " Oh," says the state's counsel, " this is an exception to the rules regulating the introduction of evidence." We answer, true, if *all* the requirements of the law, driven by *necessity* to creating such exception, had been complied with. There is no room for double meaning to the plain, pure English of the words used in the construction of the sentence confirming the right, and it seems to us no possible reasoning can be indulged to cause mistake as to its effect as a whole. We do not deem it necessary, in addressing this practical and enlightened court, to enter into anything like an extended disquisition upon the relations of statutory to constitutional law, nor do we propose to " weary the ear of patience" by an elaborate discussion of a proposition so plain as that (Art. 3125, Pasc. Dig.) the law of this state, *in its application to the case at bar*, is palpably violative of the provision quoted from the Bill of Rights.

*M. C. McLemore*, of counsel for the state, after discussing the questions of evidence, proceeded as follows on the charge to the jury:

Without reference to authority, as I apprehend that the proposition will not be controverted, I assume that the charge of the court should in all cases be "the law as applicable to the facts of the case at bar."

1st. In this case the facts either made out a case of murder in the first degree, or no case at all; and so the court below charged.

2d. The conviction of Black, under the facts of the case, depended upon the finding of the jury that Andrew Walker had done the killing in Galveston county with express malice aforethought, and that Black was present at the time, knowing such evil intention, and aided by his acts, or encouraged by his words, the principal offender (see the case of

*Burrell* v. *The State,* 18 Texas, 732); and this the court charged.

3d. In this case, as in all criminal cases, the accused was to be presumed to be innocent until the contrary was shown by legal evidence, and in case of a reasonable doubt the jury should acquit. And the court charged: " If the jury entertain a reasonable and well-grounded doubt of the guilt of the defendant, arising out of the evidence in the case, they will find him not guilty. The jury will render a true verdict, according to the law and the evidence. The law they receive from the court in the written charge read to them; the evidence they receive from the mouths of the witnesses who have testified in the case; they are the sole and exclusive judges of the weight and value of the testimony, and the degree of credibility to be given to each and every one of the witnesses who have testified in the case."

It is true that the court did not charge that the accused was presumed to be innocent until the contrary was shown by legal evidence, in the exact language of the statute, but the charge, as given, involves the enunciation of that principle of law as effectually as if the exact language had been given. Because the reason why, in a criminal case, the accused is entitled to the benefit of a reasonable doubt is upon the assumption *only* that the accused is presumed to be innocent until the contrary shall be shown; and hence the law as given in charge, as to the benefit of the reasonable doubt, was only given because the innocence of the accused was presumed, and the charge was given on that hypothesis. For by the statute itself (Pasc. Dig. of Laws, Art. 3105) it is plainly to be seen that the meaning of the Article, as a whole, is that the accused is entitled to the benefit of a reasonable doubt, because, in the humanity of the law, the accused is presumed to be innocent, not only until the contrary is shown by legal evidence, but until the jury are sat-

isfied of that fact beyond a reasonable doubt; and the reci-
tation in the statute of the fact that the accused "is pre-
sumed to be innocent," etc., is but *inducement* to the pro-
vision of the law that the accused is entitled to the benefit
of a reasonable doubt in the minds of the jury.   Wherefore
it is that the charge of the court on this subject *did* involve
the enunciation of the fact that innocence must be presumed.

The obligation upon the lower court to give this Article
3105 in charge to the jury is passed upon by our supreme
court in the case of *Pilkinton* v. *The State*, in 19 Texas,
217, and also in the case of *White* v. *The State*, 11 Texas,
773.   In the former of the two cases (*Pilkinton* v. *The
State*) the court expound in explicit language the meaning
of the statute law.   Say the court:   "If there be a *well-
founded* or *reasonable doubt* of his guilt, not merely specu-
lative, imaginary, or possible, or conjectural, but a real
doubt of his guilt, the jury ought to acquit."   And what-
ever may be the *language* of the statute, it is unques-
tionably true that the law, as interpreted by the courts,
is expressed in the above quotation from our own court, and
as is reflected from the opinions of other courts and text-
writers.   See *Webster* v. *Commonwealth*, 6 Cush. (Mass.)
320; *Giles* v. *State of Georgia*, 5 Ga. 285; Starkie on Ev.
761, para. 865; Wills on Cir. Ev. 176, 177.   Also, *Billard*
v. *The State*, 30 Texas, 367.

And the charge of the court, as given in this case, was
almost the exact language on the same subject in the case of
*Pilkinton* v. *The State*, and very much more than was held
to be necessary by our supreme court in the case of *White*
v. *The State*, in 11 Texas, and in which latter case further
special instructions were asked by the defendant, as in this.

So that it is submitted that not only did the charge of the
court cover the law of the case, as applicable to the facts,
but announced correctly the rule of law for the benefit of
the accused in this, as in all criminal cases.

The next error complained of is the refusal of the lower court to give in charge the special instructions asked by the defendant.

If the main charge was correct on the questions of law to which the same was addressed, then the giving of the charges asked by defendant would have been to repeat the law as applicable to the case, because, substantially, the law as asked by the defendant was given in the main charge.

It is true that a special instruction was asked to the effect " that the burden of proof is always with the state ; " but that instruction was asked as a necessary part of the second special instruction asked as a whole by the defendant, and cannot, therefore, be considered as having been specially refused.

But, even if it had been refused *by itself*, it must be perceived by this court that the general charge of the court is pregnant throughout with the idea that in the case on trial it devolved on the state *affirmatively* to show that the accused was guilty, as charged, beyond a reasonable doubt, and this is but to assert that the burden of proof was at all times upon the state ; and beyond this the court could not be required to go.    See *Patton* v. *Gregory*, 21 Texas, 520 ; *Henderson* v. *The State*, 12 Texas, 531 ; *Allbright* v. *Penn*, 14 Texas, 290 ; *Gallbreath* v. *Atkinson*, 15 Texas, 24 ; *Oliver* v. *Chapman*, 15 Texas, 406 ; *Wilson* v. *Lorrane*, 15 Texas, 494 ; *McCown* v. *Shrimpf*, 21 Texas, 27.

ECTOR, Presiding Judge.    The appellant, Jeff Black, Andrew J. Walker, and Amos Walker were indicted in the criminal district court of Galveston county, at its May term, 1872, for the murder of Green Butler.    The indictment in substance charges that Andrew J. Walker did the killing, and that Jeff Black and Amos Walker, being present and knowing the intent of the said Andrew J. Walker, did then

and there aid by acts, and encourage by words, the said Andrew J. Walker in the commission of the murder.

Amos Walker, one of the defendants, has never been arrested. Jeff Black was twice convicted by the criminal court of Galveston, which convictions were reversed by the supreme court for errors committed by the lower court in its charge to the jury and in proceedings on the trial. By reason of the presiding judge having been of counsel, the venue was changed to Chambers county. At the August term, 1875, of the district court of Chambers county, on the application of Andrew J. Walker, a severance was had, when Jeff Black was put on trial, and was convicted by the jury of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life. He took an appeal to the supreme court. The case was transferred from the supreme court to the court of appeals after the organization of this court.

The appellant, by his counsel, has made the following assignment of errors:

"1st. The court erred in permitting D. D. Waters to testify as to the subject of Mrs. Annie Butler's statements as a witness, on a former trial of this cause, as set forth in his bill of exceptions No. 1.

"2d. The court erred in its charge to the jury in each several paragraph thereof.

"3d. The court erred in refusing the several charges asked to be given by the defendant, as set forth in bill of exceptions No. 2.

"4th. The court erred in refusing to grant the defendant's motion for a new trial, and in overruling the same."

Mrs. Annie Butler was duly sworn (as appears from the testimony), and testified as a witness for the state at a former trial of this cause. The 1st error claimed by the defendant to have occurred was the admission of the testi-

mony of D. D. Waters to show what Mrs. Annie Butler
had sworn on a former trial of the same cause, she having
died since then.    There is no question but that Waters fully
qualified himself as to his ability to speak of said testimony.
After being duly sworn, he stated that he was acquainted
with Mrs. Annie Butler, the wife of Green Butler; that
she had died since the last trial of this cause; that she was
sworn and examined as a witness for the state on a former
trial of said cause; that he was present, heard her testi-
mony on that occasion, and could repeat it, distinguishing
between what she said on the direct and what she said on
the cross-examination.    Said Waters was then asked by the
district attorney for the state to tell the court and jury
what the said Annie Butler did say and testify to as witness
at the former trial hereof, to which the defendant objected
for the following reasons : " That the said Waters was not a
competent witness for that purpose, and that the testimony
was not admissible under the law."    The court overruled
the objections, and permitted the said Waters to testify as
to the subject of Mrs. Annie Butler's statements at a former
trial; to which ruling the defendant, by his counsel, excepted,.
and took a bill of exceptions.

It is insisted by the counsel for the appellant that the
admission of such testimony was not authorized by law,
was in violation of the provisions of *Magna Charta*, and
against the Bill of Rights as found in the 1st Article, 8th
section, of the Constitution of the state of Texas, wherein
it is provided that in all criminal prosecutions the accused
shall be confronted with the witnesses against him.    We
have been referred by the attorneys for appellant to a
number of cases to support their position.

The authorities generally agree that in civil cases the tes-
timony of a deceased witness, given in open court after
being duly sworn, may be proved by a person who heard

his testimony in a former trial of the same cause, between the same parties, and who states on oath that he can give the testimony of said deceased witness ; but quite a number of authorities can be found which deny the application of this rule to criminal cases. We think, however, at this time it has generally been declared to be the correct rule of law, both in England and in most of the American states, that the testimony of a deceased witness at a former trial of a criminal charge is admissible at a second trial of the same cause, and may be proved by another person who heard that testimony, and who can qualify himself to give it ; that in this respect there is no difference between civil and criminal cases, and that the admission of such testimony is not against the provisions of *Magna Charta*, nor against the provision of the Bill of Rights of the 1st Article, 8th section, of the Constitution of the state of Texas, wherein it is provided that in all criminal prosecutions the accused shall be confronted with the witnesses against him. The current of authorities sustains the ruling in the court below in permitting Waters to give the testimony of the deceased witness at a former trial of this cause.

" Proof of what a deceased witness testifies to on a preliminary examination before a justice of the peace, touching the same charge for which the accused stands indicted, is admissible against him, although the examination was not reduced to writing." *Davis* v. *The State*, 17 Ala. 354 ; *State* v. *Hooker*, 17 Vt. 658.

Evidence of the testimony of a deceased witness at a former trial of a criminal charge is admissible at a second trial for the same offense. *Summers* v. *The State*, 5 Ohio St. 325 ; 10 Humph. (Tenn.) 479 ; *Pope* v. *The State*, 22 Ark. 371.

What a witness, since deceased, swore to on a former trial was taken down in a brief of testimony, and a witness

testifies that the brief contained the evidence of the deceased. *Held*, that the brief might be read in evidence. *Riggins* v. *Brown*, 12 Ga. 271.

Whilst it has been pretty generally conceded that the decided preponderance of decisions now favors the admissibility of such testimony, we find many of the earlier decisions held to the doctrine that the precise words of the deceased witness must be proved. But the rule in that respect has been greatly relaxed in modern times, and now the substance of all that was said by the deceased when he testified is sufficient. *Trammell* v. *Hemphill*, 27 Ga. 525; *United States* v. *Macomb*, 5 McLean, 286; *Horne* v. *Williams*, 23 Ind. 37; 18 Pick. (Mass.) 434; 45 Cal. 145; 1 Greenl. on Ev. 165; Russell on Cr. 683, and note; Starkie on Ev. 280, note *n*.

The supreme court of this state, in the case of *Greenwood* v. *The State*, 35 Texas, 587, have followed the rule of evidence recognized by standard text-writers, and by courts of last resort in nearly all of the states in the American Union.

The testimony of Mrs. Butler, as appears from the transcript, was given in under all the solemnities of an oath, at a trial of this cause, when the accused was present and cross-examined her. All the leading cases of a similar character hold that the admission of such testimony violates no constitutional right of the defendant, the principle decided being that the language used from the time of *Magna Charta*, in the federal and all the state Constitutions, whereby was secured to the accused the right of being confronted with the witnesses against him at his trial, was not intended to alter the well-established rule of evidence by which the best evidence could be availed of in all cases. At a former day of the present term, in the case of *Johnson* v. *The State*, this court decided that the written testimony of a deceased witness in a criminal case, taken before an examining court,

touching the same charge for which the accused stands indicted, was admissible evidence when he was on trial for the offense charged in said indictment, and was not in violation of Article 6605, Paschal's Digest, nor of the 1st Article, 8th section, of the Constitution of Texas of 1869.

The counsel for the appellant insist that the district court committed a grave error in permitting the witness Waters to testify as to the evidence of Mrs. Butler (then dead), given on a former trial of this cause, relative to the dying declarations of her husband.

The constitutional right of the accused to confront the witnesses against him, face to face, is not impaired by the rule of law allowing the dying declarations of the deceased, made *in extremis*, to be given in evidence upon a trial for his homicide.   The Constitution does not alter the common-law rule of evidence, but leaves it to the law to determine what a witness, when confronted, shall be allowed to state as evidence.   *Walston* v. *The Commonwealth*, 16 B. Mon. (Ky.) 15 ; *Campbell* v. *The State*, 11 Ga. 353 ; *Commonwealth* v. *Carey*, 12 Cush. (Mass.) 246 ; *People* v. *Glem*, 10 Cal. ; *Burrell* v. *The State*, 18 Texas, 713 ; *Benavides* v. *The State*, 31 Texas, 131.

Article 3125, Paschal's Digest, in providing for the admission of dying declarations, lays down no new rule.   It is merely affirming the common-law rule of evidence.   By an examination of the objections taken by the counsel for the defendant in the lower court, it will be seen that no special objection was taken to Waters giving Mrs. Butler's testimony because it purported to give the dying declarations of her husband.   Objections to the admission of dying declarations must be made on the trial; it is too late to object for the first time in this court.   *Lambert* v. *The State*, Morr. (Miss.) St. Cas. 509.   Mrs. Butler testified to other facts, which were material, besides the dying declarations of her husband.   And, so far as the record shows,

Mrs. Butler's testimony was given in by her under oath, at a former trial of this cause, without objection. If Mrs. Butler was a competent witness at the time she testified, and qualified herself to give to the jury the declarations of her husband, Green Butler, *in extremis*, at a former trial of the appellant in this cause, and it is proved that Mrs. Butler is dead, we have been unable to find any decision or rule of evidence which would exclude a witness who heard her testify, and could give the substance of her testimony, from giving it in a subsequent trial of the same cause. The doctrine has been too long and too well settled in this state, that the dying declarations of the deceased, in a case of homicide, may be proved by a witness who heard the same, to be now questioned. It often happens that there is no third person present to be an eye-witness of the fact, or to identify the murderer, the usual witness in other felonies— viz., the party himself—having been gotten rid of. Dying declarations are admitted as evidence only in cases of homicide. Two considerations unite in their admission—the necessity of the case and the situation of the declarant. The danger of impending death is an equivalent to the sanction of an oath. When a party is at a point of death, and when every hope of this world is gone, when every motive to falsehood is silenced, and the mind is induced by the most powerful consideration to speak the truth, the law considers that a situation so solemn and awful creates an obligation equal to that imposed by an oath administered in court.

Article 3125 of our Code of Criminal Procedure (Pasc. Dig.), which provides for the admission of dying declarations, lays down no new rule. It is merely affirming the common law.

The testimony delivered by Waters, speaking for Mrs. Annie Butler, should have been admitted as a part of the *res gestœ* of this mysterious homicide.

We deem it unnecessary to notice at this time the 2d

25

assignment of errors, viz., that the court erred in its charge to the jury.

After the court had submitted its charge to the jury the counsel for the defendant asked the court to give the following special charges :

" 1st. The accused must be presumed to be innocent until his guilt is established by legal evidence, and in case of a reasonable doubt as to his guilt he is entitled to be acquitted.

" 2d. The indictment in this case charges that he, Jeff Black, was present, aiding and assisting, encouraging by his acts and words, in the killing of Green Butler.

" 3d. In this case the burden of proof to show the truth of the charge is at all times on the state.

" 4th. If, then, the jury believe from the evidence that there is a reasonable doubt, arising out of the evidence, as to the presence of the accused, Jeff Black, at the time of the commission of the murder, then you should acquit him."

The court refused to give the above special charges asked ; to which the defendant excepted, and took a bill of exceptions.

It is admitted by the counsel on the part of the state that the court did not charge that the accused was presumed to be innocent until the contrary was shown by legal evidence, but it is insisted by them that the charge, as given, involves the enunciation of that principle as effectually as if the exact language had been given ; and, further, that it was a matter for the court to determine, whether or not such a charge was necessary; and in support of this last position we have been referred to the case of *Pilkinton* v. *The State*, 19 Texas, 217.

We will copy the portions of the charge which was given, upon which the assistant attorney general and the other counsel for the state rely to show that the giving of the

charges, as asked by the defendant's counsel, would have been but to repeat the law as applicable to the case which had already been given in the main charge. They are as follows:

" 3d. If the jury are not satisfied from the evidence that Green Butler was shot and killed by Andrew J. Walker, and that the defendant, Jeff Black, was present at the time of the killing, aiding the said Walker by his acts or encouraging him by his words, they will find him not guilty.

" 4th. If the jury entertain a reasonable and well-founded doubt of the guilt of the defendant, arising out of the evidence of the case, they will find him not guilty."

There were two important facts to be determined by the jury: 1st. Did Andrew J. Walker murder Green Butler, as charged in the indictment? 2d. If Andrew J. Walker did murder Green Butler, as charged in the indictment, was Jeff Black then present with the said Walker, and, knowing the intent of the said Walker, did he, the said Black, then and there aid by acts, or encourage by words, him, the said Walker, in the murder of the said Butler?

The case is one of circumstantial evidence as against the appellant, Black. The evidence in the transcript shows beyond dispute that Green Butler was assassinated in his own yard, a little after dark on Sunday night, the 19th of May, 1872. The circumstances connected with the killing, we think, show that the act was planned beforehand, and was deliberately executed, and was without excuse, justification, or palliation. The evidence in the record is substantially the same as that testified to on the former trial of this case. *Black* v. *The State*, 42 Texas, 377. Green Butler, in his dying declaration, said that Andrew Walker killed him; that he did not know the other man who was with Walker when he was shot. None of the other witnesses examined recognized the man who shot Butler, or the person who was with him. And the description of the man who was with the

person who killed Butler, as given by the witnesses, did not correspond with the appearance of Black. It is attempted to be shown that Andrew J. Walker is the person who shot and murdered Butler, and that another person was present, acting his part with Walker in said murder; that Black was with Walker a short time before and after the murder, and that, therefore, Black was the person who was with Walker, aiding and encouraging him in the murder.

It is insisted on the part of the appellant that the time Butler was killed, and the time and distance from Butler's house, at which Black was seen before and after the killing, and the description of the person given by the witnesses, show that he, Black, was not at Butler's house when Butler was killed. The record discloses no motive that Andrew Walker, Amos Walker, or Jeff Black had to take the life of Green Butler. Andrew Walker and Green Butler had been raised together as boys, and had been personal friends; that Black and Butler were acquainted. The wife of Butler testified that she had never heard of any difficulty between her husband and any of the defendants or anybody else. No effort was made on the trial to show that the killing of Butler resulted, or could have resulted, in any advantage to the accused. The absence of all inducing cause on the part of Black to kill Butler was relied on by the attorneys for Black as strengthening the presumption of his innocence. We believe that the court below should have given the charges asked by the counsel for the defendant.

Article 3105 of our Criminal Code (Pasc. Dig.) is as follows: "A defendant in a criminal cause is presumed to be innocent until his guilt is established by legal evidence, and in case of reasonable doubt as to his guilt he is entitled to be acquitted." It will be seen by reference to the 1st special instruction asked by the counsel for defendant, in the court below, that it is in the exact language of said Article 3105. It was the law, and, be it much or little, the defend-

ant was entitled to all of it, and it should have been given; and especially in a case like the one at bar, when the life of a fellow-being was at stake, and when all the evidence against him was circumstantial.

We have found two decisions exactly in point. The supreme court of Indiana, Osborn, J., delivering the opinion of the court, say: "At the proper time the appellant asked the court to instruct the jury as follows: 'The defendant is presumed to be innocent until the contrary is shown, and when there is a reasonable doubt whether his guilt is satisfactorily shown he must be acquitted,' which was refused on the ground that the same had been substantially given in the instructions of the court." The court say: "We have carefully examined all the instructions, and find that the second branch of that asked and refused had been substantially given, but they were silent on the presumption of innocence. The court should have charged the jury on that subject, as asked, and an error was committed by its refusal to do so." *Long* v. *The State,* 46 Ind. 589.

Again, in 1875, the same question came before the supreme court of Indiana in the case of *Line* v. *The State,* 51 Ind. 175, in which Biddle, C. J., delivered the opinion, and the judgment of the lower court was reversed because the court below refused to instruct the jury "that the defendant is presumed to be innocent of the crime with which he is charged, and before he can be convicted the state must prove his guilt beyond a reasonable doubt."

We have examined the statute of the state of Indiana to see if there was any provision similar to Article 3105 in our Criminal Code. Article 10, chapter 1, of the Code of Criminal Procedure of Indiana is as follows: "A defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt whether his guilt is satisfactorily

shown he must be acquitted. When there is a reasonable doubt in which of two or more degrees of an offense he is guilty, he may be convicted of the lower degree only.'' It will be seen that there is no material difference between the law of Texas and Indiana on the point at issue.

The supreme court of Alabama, in the case of *Mozier* v. *The State*, 44 Ala. 15, reversed the judgment because the lower court refused to give the following special instruction asked by the counsel for the defendant: ''That innocence should be presumed until the case proved against the prisoner, in all the material circumstances, is beyond any reasonable doubt; and that the evidence ought to be strong and cogent to find the defendant guilty as charged.''

In the case of *Pilkinton* v. *The State*, 19 Texas, 214, to which we have been referred by the assistant attorney general, the defendant, Pilkinton, by attorney, asked the court to instruct the jury ''that if they have a reasonable doubt, arising from the testimony, of the guilt of the defendant they should acquit.'' This charge was refused. The supreme court say: ''In general, and especially when the evidence is of doubtful interpretation, or is not of so conclusive a nature and tendency as to exclude any reasonable doubt, it would certainly be proper to instruct the jury respecting their duty if they have reasonable doubts, arising out of the evidence, as the court was asked to instruct them in this case. But if they believed the witnesses, it is not easy to perceive any room for doubt respecting the guilt of the accused. The court doubtless thought the evidence did not call for the giving of the instruction, and, if the witnesses were entitled to credit, we cannot say the court was in error.'' The supreme court of the state of Texas, Roberts, C. J., delivering the opinion, in the case of *Carr* v. *The State*, 41 Texas, 545, and also in the case of *Thomas* v. *The State*, 40 Texas, 45, opinion by

Gray, J., hold that the presiding judge, in all cases of felony, should give such charge as was asked by the counsel for the defendant in the case of *Pilkinton* v. *The State*.

The court committed an error in the case now before us in refusing to give the 3d special charge asked by the appellant. It is the law that in this case the burden of proof to show the truth of the charge is at all times on the state. This is an elementary principle so well established and so fully laid down and discussed in the text-books, and so vital to the rights of the accused, he was entitled to it.

We also believe that the court should have given the 4th special instruction asked—that if the jury believed from the evidence that there was a reasonable doubt, arising out of the evidence, as to the presence of the accused, Jeff Black, at the time and place of the commission of the murder, then they should acquit him. And under the evidence in this case it was of vital importance to bring the matter prominently before the jury that, before they could find the defendant guilty, they must not only believe beyond a reasonable doubt that Walker murdered Butler, as charged in the indictment, but they must go a step further, and be satisfied from the evidence, beyond a reasonable doubt, as to the presence of the accused, Jeff Black, at the time and place of the murder, and that, knowing the intent of the said Walker, he, the said Black, did aid by acts, or encourage by words, him, the said Walker, in the murder of Butler.

It is not sufficient, in a case of circumstantial evidence, that the circumstances proved coincide with, account for, and therefore render probable, the hypothesis sought to be established by the prosecution; but they must exclude, to a moral certainty, every other hypothesis but the single one of guilt, or the jury must find the defendant not guilty. And each fact in a chain of facts from which the main fact in issue is to be inferred must be proved by competent

evidence, and by the same weight and force of evidence as if each one were the main fact in issue; and all the facts proved must be consistent with each other, and with the main fact sought to be proved.

As this case will have to be tried again, we will not express an opinion as to the sufficiency of the evidence to support the verdict of the jury.

The judgment of the district court is reversed and the cause remanded.

*Reversed and remanded.*